NO. 24-1342

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

RE CARROLL MANAGEMENT COMPANY, CIP CONSTRUCTION COMPANY, CARROLL INDUSTRIAL DEVELOPMENT US, LLC, ALARIS HOMES, INC., SNAP PUBLICATIONS, LLC, and CARROLL INVESTMENT PROPERTIES, INC.,

*Plaintiffs-Appellants*,

v.

DUN & BRADSTREET, INC.,

*Defendant-Appellee.*

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

---

### BRIEF OF DEFENDANT-APPELLEE

---

Ashley I. Kissinger
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596

Elizabeth Schilken
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Elizabeth Seidlin-Bernstein
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Robert B. McNeill
Offit Kurman, P.A.
301 S. College Street, Suite 2600
Charlotte, NC 28202-6006

*Counsel for Defendant-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1342__      Caption: __RE Carroll Management Company, et al. v. Dun & Bradstreet, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Dun & Bradstreet, Inc.__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:

       The direct parent of Appellee Dun & Bradstreet, Inc. is The Dun & Bradstreet Corporation. The direct parent of The Dun & Bradstreet Corporation is Star Intermediate III, LLC. The direct parent of Star Intermediate III, LLC is Star Intermediate II, LLC. The direct parent of Star Intermediate II, LLC and the ultimate parent of Dun & Bradstreet, Inc. is Dun & Bradstreet Holdings, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation?                    ☑YES ☐NO
       If yes, identify entity and nature of interest:

       Dun & Bradstreet Holdings, Inc., the ultimate parent of Appellee Dun & Bradstreet, Inc., is a
       publicly held corporation.  Cannae Holdings, Inc. is a publicly held corporation and owns more
       than 10% of the stock of Dun & Bradstreet Holdings, Inc.

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?                      ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
       party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
       caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
       corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational
       victim of the criminal activity and (2) if an organizational victim is a corporation, the
       parent corporation and any publicly held corporation that owns 10% or more of the stock
       of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Ashley I. Kissinger                     Date:      May 3, 2024

Counsel for: Dun & Bradstreet, Inc.

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF THE CASE........................................................................ 1

    I.      Plaintiffs' original Complaint asserted myriad claims arising
           from D&B's credit scores and ratings on the companies.................... 1

    II.     The district court dismissed the Complaint because Plaintiffs
           challenged D&B's constitutionally protected opinions; they did
           not allege that any *fact* stated in or implied by the credit reports
           was false. ............................................................................................ 3

    III.    Plaintiffs requested leave to file an amended complaint under
           Rule 59(e), this time solely asserting claims for libel and
           violation of the UDTPA. ....................................................................... 5

    IV.    The district court denied Plaintiffs' Rule 59(e) motion because
           amending the Complaint was futile; Plaintiffs still had not
           plausibly alleged a false fact, nor had they pled actual injury
           sufficient to support a UDTPA claim.................................................. 9

SUMMARY OF ARGUMENT .................................................................. 11

ARGUMENT ............................................................................................ 12

    I.      The district court correctly dismissed and denied leave to
           amend the defamation claims because Plaintiffs did not
           plausibly plead a materially false fact................................................ 12

          A.     D&B's ratings are evaluative opinions that do not convey
                  any provably false facts. ........................................................ 14

          B.     The statements in the CIP and RE Carroll credit reports
                  about lawsuits, an unsatisfied judgment, and UCC filings
                  are not materially false......................................................... 24

               1.     The credit reports accurately reported information
                      about lawsuits. .............................................................. 25

i

2.      D&B accurately reported information about an
        unsatisfied judgment....................................................... 30

3.      D&B accurately reported information about UCC
        filings. ........................................................................ 32

II.     The district court correctly dismissed the UDTPA claims
        because Plaintiffs have only pleaded reputational harm. .................. 33

A.      Plaintiffs' UDTPA claim based on statements in the
        credit reports is duplicative of their defamation claims
        and is not actionable for the same reasons............................... 34

B.      Plaintiffs' UDTPA claim based on D&B's business
        practices fails because they have not pleaded any actual
        injury other than reputational harm. ........................................ 34

CONCLUSION ................................................................................ 40

CERTIFICATE OF COMPLIANCE ....................................................... 43

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    472 F.3d 99 (4th Cir. 2006) ................................................................35

*Air Wis. Airlines Corp. v. Hoeper*,
    571 U.S. 237 (2014)........................................................................24

*Aviation Charter, Inc. v. Aviation Rsch. Grp./US*,
    416 F.3d 864 (8th Cir. 2005) .........................................15, 16, 17, 33

*Belk, Inc. v. Meyer Corp., U.S.*,
    679 F.3d 146 (4th Cir. 2012) ............................................................35

*Biospherics, Inc. v. Forbes, Inc.*,
    151 F.3d 180 (4th Cir. 1998) ...................................................*passim*

*Browne v. Avvo Inc.*,
    525 F. Supp. 2d 1249 (W.D. Wash. 2007) ...........................15, 17, 21

*Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*,
    354 S.W.3d 234 (Mo. Ct. App. 2011) ...............................................15

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) .............................................14, 24, 25

*Citibank USA, N.A. v. Ragsdale*,
    2009 WL 10705209 (E.D.N.C. Jan. 30, 2009) ..................................38

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
    499 F.3d 520 (6th Cir. 2007) .........................................14, 15, 16, 19

*Davis v. Boeheim*,
    24 N.Y.3d 262 (2014).................................................................18, 19

*Design Res., Inc. v. Leather Indus. of Am.*,
    789 F.3d 495 (4th Cir. 2015) ............................................................17

*Desmond v. News & Observer Publ'g Co.*,
    375 N.C. 21 (2020) ...................................................................*passim*

*Desper v. Clarke*,
    1 F.4th 236 (4th Cir. 2021) ...............................................................22

*Ellis v. Smith-Broadhurst, Inc.*,
    48 N.C. App. 180 (1980) .................................................................35

*Food Lion, Inc. v. Cap. Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) .......................................................4, 34

*Harvey v. Cable News Network, Inc.*,
    48 F.4th 257 (4th Cir. 2022) ...............................................12, 24, 25

*Hawkins v. Hawkins*,
    101 N.C. App. 529 (1991) .............................................................38, 39

*Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co.*,
    2020 WL 1150214 (M.D.N.C. Mar. 10, 2020)...................................39

*Hustler Mag., Inc. v. Falwell*,
    485 U.S. 46 (1988).........................................................................4, 34

*Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
    175 F.3d 848 (10th Cir. 1999) ...............................................15, 17, 21

*Kirkman v. Tison*,
    2012 WL 4891624 (M.D.N.C. Oct. 15, 2012)...................................38

*Lewis v. Rapp*,
    220 N.C. App. 299 (2012) ................................................................14

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991).............................................................24, 29, 31

*Mayton v. Hiatt's Used Cars, Inc.*,
    45 N.C. App. 206 (1980) ....................................................10, 35, 37

*Megaro v. McCollum*,
    66 F.4th 151 (4th Cir. 2023) ...........................................................32

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990).......................................................................14, 18

*Mirafuentes v. Estevez*,
    2015 WL 8177935 (E.D. Va. Nov. 30, 2015) ...................................................15

*NetScout Sys., Inc. v. Gartner, Inc.*,
    223 A.3d 37 (Conn. 2020) ...................................................................14, 17, 20

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ...........................................................................19

*Pearce v. Am. Def. Life Ins. Co.*,
    316 N.C. 461 (1986) ....................................................................................35, 40

*Perfect Choice Exteriors, LLC v. Better Bus. Bureau of Cent. Illinois, Inc.*,
    99 N.E.3d 541 (Ill. Ct. App. 2018) .............................................................15, 20

*Piedmont Inst. of Pain Mgmt. v. Staton Found.*,
    157 N.C. App. 577 (2003) ...........................................................34, 35, 37, 40

*Pinehurst, Inc. v. O'Leary Brothers Realty, Inc.*,
    79 N.C. App. 51 (1986) ................................................................................36, 37, 39

*Robinson v. Williams*,
    59 F.4th 113 (4th Cir. 2023) ..............................................................................29

*Seaton v. TripAdvisor LLC*,
    728 F.3d 592 (6th Cir. 2013) ......................................................................19, 20

*Snyder v. Phelps*,
    580 F.3d 206 (4th Cir. 2009) .............................................................................14

*Stevens v. Town of Snow Hill, N.C.*,
    2021 WL 2345353 (E.D.N.C. June 8, 2021) .....................................................21

*Sw. Life Ins. Grp. v. Fewkes Mgmt. Corp.*,
    245 F. App'x 304 (4th Cir. 2007) .....................................................................38

*Swengler v. ITT Corp. Electro-Optical Prods. Div.*,
    993 F.2d 1063 (4th Cir. 1993) ...........................................................................18

*Talbert v. Mauney*,
    80 N.C. App. 477 (1986) ...................................................................................37

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017) ................................................................21

*United States ex rel. Taylor v. Boyko*,
    39 F.4th 177 (4th Cir. 2022) ...............................................................23

*United States v. Al-Hamdi*,
    356 F.3d 564 (4th Cir. 2004) ................................................................7

*Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*,
    2016 WL 3087055 (E.D. Va. May 31, 2016) .....................................15

*ZL Techs., Inc. v. Gartner Grp., Inc.*,
    709 F. Supp. 2d 789 (N.D. Cal. 2010) ..............................................20

*ZL Techs., Inc. v. Gartner Grp., Inc.*,
    433 F. App'x 547 (9th Cir. 2011) ................................................15, 20

*Zumkehr v. Hidden Lakes Prop. Owners Ass'n*,
    2003 WL 21496467 (N.C. Ct. App. July 1, 2003) ............................35

**Statutes**

N.C. Gen. Stat. § 75-1.1 ............................................................................37

N.C. Gen. Stat. § 75-16 .............................................................................38

N.C. Gen. Stat. § 75-16.1 ..........................................................................37

**Other Authorities**

25 C.J.S. Damages § 16 ............................................................................39

Fed. R. Civ. P. 12 .................................................................................3, 11

Fed. R. Civ. P. 59 .......................................................................5, 7, 9, 10

N.C.P.I. - Civ. 813.70 ...............................................................................38

U.S. Const. amend. I .........................................................................*passim*

## STATEMENT OF THE CASE

### I.    Plaintiffs' original Complaint asserted myriad claims arising from D&B's credit scores and ratings on the companies.

Plaintiffs-Appellants RE Carroll Management Company ("RE Carroll"), CIP Construction Company ("CIP"), Carroll Industrial Development US, LLC ("Carroll Industrial"), Alaris Homes, Inc. ("Alaris"), Snap Publications, LLC ("Snap"), and Carroll Investment Properties, Inc. ("Carroll Investment") (collectively, "Plaintiffs") filed their original Complaint against Defendant-Appellee Dun & Bradstreet, Inc. ("D&B") in June 2023, asserting claims for libel and violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA").[1]  JA28-34.

The Complaint alleged that D&B defamed Plaintiffs by making available to the public business credit reports that cast the companies "in an inaccurate and negative light."[2]  JA23; JA28-32.  They based their claims on statements in the

---

[1] The Complaint also named Dun & Bradstreet Holdings, Inc. and The Dun & Bradstreet Corporation as Defendants and asserted additional claims for misappropriation of name, violation of North Carolina's Racketeer Influenced and Corrupt Organizations Act, and injunctive relief.  JA10; JA26-27; JA34-38.  The district court dismissed those Defendants for lack of personal jurisdiction and dismissed those causes of action for failure to state a claim.  JA7; JA125-128. Plaintiffs have not appealed those rulings.

[2] The Complaint attached credit reports available as of June 2022 for each Plaintiff. JA18-22; *see also* JA41-55 (CIP report); JA56-70 (RE Carroll report); JA71-78 (Carroll Industrial report); JA79-90 (Alaris report); JA91-100 (Snap report); and JA101-113 (Carroll Investment report).

1

"Risk Assessment" section of each report, which conveys D&B's analyses and predictions in categories including "Overall Business Risk," "D&B Viability Rating," "Failure Score," and "Delinquency Score," expressed in numeric scores and percentages as well as descriptors such as "high risk" and "very high potential for severely delinquent payments." JA14-26; *e.g.*, JA43-47. Plaintiffs alleged that D&B "lacks access to the information and documentation" that would allow it to assess the companies' "overall business risk, viability, potential for failure, delinquency rate, stability, financial strength, financial conditions, and credit histories." JA22. Although each credit report lists various facts relevant to the ratings, including data on "Trade Payments" and "Legal Events," *e.g.*, JA48-53, Plaintiffs did not challenge the veracity of any specific facts. They alleged only that they are "established companies with strong credit histories and solid financials, which promptly satisfy their contractual obligations." JA23.

Plaintiffs based their UDTPA claims on allegations that when they complained to D&B about purported inaccuracies in the credit reports, D&B responded that it would address Plaintiffs' concerns if they subscribed to D&B's "CreditBuilder Line products" and provided "private, protected information." JA33.

2

II.  **The district court dismissed the Complaint because Plaintiffs challenged
D&B's constitutionally protected opinions; they did not allege that any
*fact* stated in or implied by the credit reports was false.**

Defendants moved to dismiss the original Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).  JA114-117.  The district court granted the

motion on December 12, 2023.  JA118-128.

With respect to the claims that Plaintiffs pursue on appeal, the court held

that their libel claims failed as a matter of law because the challenged statements in

the credit reports were constitutionally protected expressions of opinion.  JA124-

125.  Observing that Plaintiffs did "not explicitly challenge the accuracy of any"

data underlying D&B's ratings, JA123, the court analyzed the reports' language

and structure in detail and concluded that, "[i]n context and taken together,

viewing tone, language, and accompanying data, a reasonable reader would

understand the reports to be Dun & Bradstreet's subjective assessment," JA124.

In particular, the court pointed to the reports' use of language like "Dun &

Bradstreet Thinks," "D&B Risk Assessment," and "D&B Viability Rating," all of

which "suggest opinion."  JA123; *e.g.*, JA43-45.  It also found relevant that each of

the reports expressly disclose that D&B "currently has no financial information on

file for this company."  JA124; *e.g.*, JA55.  The court found that "[i]nclusion of

underlying information used, explicit mention of unavailable data, and the lack of a

challenge to the accuracy of the specific underlying information also tend to show

that a reasonable reader would treat these statements as 'opinion of the author

3

drawn from the circumstances related.'"  JA124 (quoting *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998)).  As for Plaintiffs' allegation that D&B lacks enough information to assess their creditworthiness, JA124, the court explained that this is simply a criticism of D&B's "evaluation process for forming its business opinion," not an allegation of a false statement of fact as is required to adequately plead a defamation claim.  JA125.

Turning to the UDTPA claim, the district court explained that a "plaintiff may not use the UDTPA or other 'non-reputational tort claims' to recover defamation-type damages 'without satisfying the stricter (First Amendment) standards of a defamation claim.'"  JA126-127 (quoting *Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999), and citing *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988)).  Because Plaintiffs alleged "only reputational harm throughout the complaint," and the alleged harm arose from constitutionally protected statements of opinion, Plaintiffs could not maintain their UDTPA claim as a matter of law.  JA126-127; *see also, e.g.*, JA34 (allegation that D&B's purported UDTPA violation caused injury to Plaintiffs' "brand").  As the court put it, Plaintiffs could not "'end-run around First Amendment strictures' by seeking relief for the same alleged damages to their reputation that they cannot obtain through their defamation claim."  JA127.

4

The district court dismissed the Complaint with prejudice and entered judgment against Plaintiffs on December 12 and 13, 2023.  JA128-129.

## III.  Plaintiffs requested leave to file an amended complaint under Rule 59(e), this time solely asserting claims for libel and violation of the UDTPA.

On January 9, 2024, Plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, requesting leave to amend the Complaint as to their libel and UDTPA claims.  JA130-131.  The district court directed Plaintiffs to file a proposed amended complaint as required for such a motion, and they did so on January 22, 2024.  JA7; JA133; JA139.

In their Proposed Amended Complaint, Plaintiffs offered a number of new allegations aimed at reviving their libel and UDTPA claims:

- They quoted extensively from various marketing materials and reference guides for D&B products—none of which are part of the credit reports at issue—in an effort to show that D&B presents its credit reports "as being based on robust data, highly accurate, and so reliable that they can and should be used to automate decision-making."  JA142.  For example, Plaintiffs quoted from a "promotional brochure" on D&B's website that touts D&B's ratings as being based on data that is "comprehensive" and "curated from tens of thousands of sources" and says that its business credit reports are "continuously updated" and allow "data-driven decisions."  JA143.

5

- They repeatedly asserted that D&B's credit reports "are completely arbitrary and are untethered to any actual or purported factual information." JA151; JA153; JA156; JA159; JA161; JA162; JA164.

- They alleged that the "payment experiences" listed in each credit report "represent only a small fraction of each Plaintiff's commercial and transactional activities." JA151-152. Plaintiffs did not dispute the accuracy of any of the payment experiences included in the reports. Instead, they alleged that the payment experiences "cannot be investigated or disputed" because "D&B refuses to disclose any information regarding them." JA172; JA174. They did not allege, however, that they actually tried to obtain this information from D&B. JA165-168; JA259-261. They simply alleged that, "[u]pon information and belief, D&B will not provide a company any information regarding the source or nature of a negative payment experience." JA148. Nor did they offer any representations about their history of payments to their creditors, *e.g.*, that they always pay on time. *See generally* JA139-183.

- They alleged for the first time that the credit reports on CIP and RE Carroll contain inaccurate information about lawsuits, a judgment, and UCC filings. JA153-158. Specifically, they claimed that the reports: (1) incorrectly described the lawsuits as "pending," when in fact the

6

lawsuits had already been resolved when D&B published the reports in June 2022, (2) incorrectly described a $1,498 judgment against RE Carroll as "unsatisfied," when in fact the judgment had already been satisfied as of June 2022, and (3) included three UCC filings in the CIP report for which the debtor is actually Ascot Point Village Apartments, LLC ("Ascot"), "a separate and distinct entity from CIP."  JA153-158.

- They also alleged for the first time that the CIP and Carroll Investment credit reports reference UCC filings that do "not exist."[3]  JA154; JA159.

- Plaintiffs alleged that, at some point after they filed their original Complaint, they discovered that some of the negative scores and ratings in the credit reports had improved, "seemingly without any material change to the underlying factual information."  JA169.  They speculated

---

[3] In its opposition to Plaintiffs' Rule 59(e) motion, D&B requested that the district court take judicial notice of official records attached to the Affidavit of Ashley I. Kissinger (the "Kissinger Affidavit"), which show that the UCC filings do, in fact, exist.  JA318-335; *RE Carroll Mgm't Co. v. Dun & Bradstreet, Inc.*, No. 1:23-CV-483 (M.D.N.C.) ("Trial Court Proceedings"), Dkt. 41 at 10-11 & n.5 (D&B's Opposition to Rule 59(e) Motion).  Plaintiffs did not dispute the authenticity of those records in their reply brief.  *See* Trial Court Proceedings, Dkt. 43.  They have not raised any argument relating to the supposedly nonexistent UCC filings on appeal, thus abandoning that argument.  *See* Brief of Plaintiffs-Appellants ("Br.") at 10, 26-28 (discussing other UCC filings but not those Plaintiffs initially claimed do not exist); *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

that "D&B improved Plaintiffs' false and artificially low scores and ratings as a hedge against potential liability," and that "there would have been no improvement in Plaintiffs' Credit Reports in the absence of this lawsuit." JA171.

All six Plaintiffs sought leave to assert a libel per se claim based on the credit reports' allegedly false portrayal of "each Plaintiff as posing high risks to lenders and potential business partners." JA177-178. In addition, Plaintiffs CIP and RE Carroll sought leave to assert separate libel per se claims based on the information about lawsuits, a judgment, and UCC filings in their credit reports.[4] JA171-175.

Plaintiffs also sought leave to assert two UDTPA claims. The first claim, asserted on behalf of CIP, RE Carroll, and Carroll Investment, was based on the same allegations as those Plaintiffs' libel claims. JA178-179. The second claim, asserted on behalf of all Plaintiffs, was based on D&B's alleged business practices. JA179-182. Plaintiffs alleged that "D&B uses the potential harms from a negative business credit reports [*sic*] as leverage to induce companies to pay for D&B's

---

[4] Plaintiff Carroll Investment also sought leave to assert a separate libel per se claim based on the UCC filing it alleged "never existed," JA175, but it has abandoned that claim on appeal, *see supra* n. 3.

8

subscription services in hopes of improving their scores and ratings."[5]  JA180.

They also alleged that D&B's conduct has "proximately caused injury to Plaintiffs,

including without limitation, attorneys' fees incurred in bringing suit to put a stop

to D&B's misconduct."  JA182.  They did not allege any other injuries.  JA182.

Plaintiffs sought compensatory damages, treble damages under the UDTPA,

attorneys' fees, and injunctive relief requiring D&B to remove all information

about Plaintiffs from its databases "unless D&B receives Plaintiffs' express

consent to publish information" about them.  JA182-183.

**IV.  The district court denied Plaintiffs' Rule 59(e) motion because amending the Complaint was futile; Plaintiffs still had not plausibly alleged a false fact, nor had they pled actual injury sufficient to support a UDTPA claim.**

The district court denied Plaintiffs' Rule 59(e) Motion on March 18, 2024.

JA336-343.

With respect to the defamation claims, the court first examined the

challenged factual statements about pending lawsuits, an unsatisfied judgment, and

UCC filings, and determined that Plaintiffs had not plausibly pleaded the

information D&B reported was false.  JA338-339.  The court then rejected

Plaintiffs' claim that the credit reports imply false facts about the companies'

---

[5] Elsewhere, Plaintiffs acknowledged that D&B did offer a way to correct credit reports for free by providing financial information and disputing payment experiences through the "D-U-N-S Manager."  JA146-147.  They did not plead that they ever availed themselves of this option, however.

creditworthiness because Plaintiffs had not met their burden of pleading what facts "they believe are falsely implied."  JA340.

Regarding the UDTPA claims, the district court reiterated its earlier holding that Plaintiffs "may not seek relief under the UDTPA for the same alleged reputational damages" sought through its non-actionable defamation claims. JA341.  The court also noted that Plaintiffs "cite no case law establishing that choosing to incur attorney fees to file a UDTPA claim is an actual injury."  JA342. "Such a result is unlikely," the court observed, "since the statute authorizes recovery of attorney fees incurred in prosecuting a UDTPA claim, but only after showing a UDTPA violation and an 'actual injury as a result of that violation.'" JA342 (quoting *Mayton v. Hiatt's Used Cars, Inc.*, 45 N.C. App. 206, 212 (1980)). "Even nominal damages for" a UDTPA claim "must be supported by an actual injury," the court held.  JA342.  Accordingly, Plaintiffs had "not alleged facts sufficient to support an inference that the alleged UDTPA violation 'proximately caused injury' to them."  JA342.

Having determined that the Proposed Amended Complaint would also fail to state a claim, the court denied Plaintiffs' Rule 59(e) motion.  JA 343.  Plaintiffs noticed this appeal on April 15, 2024.  JA344-345.

## SUMMARY OF ARGUMENT

To survive a Rule 12(b)(6) motion, a defamation plaintiff must plausibly plead that the defendant published or implied a statement of fact that is provably false. Plaintiffs twice failed to meet this basic requirement, and the district court's rulings dismissing this action were therefore entirely correct.

The various excuses Plaintiffs offer for their inadequate pleading all fail. The credit reports do not misrepresent the status of the various lawsuits, judgment, and UCC filings reflected in them. Plaintiffs contend that when they complained to D&B about the negative ratings in their reports, D&B declined to change the reports without receiving additional data from Plaintiffs that might justify improved ratings. But this contention says nothing about the truth or falsity of facts underlying the reports; it simply reflects the fact that D&B was not willing to change the scores and ratings it gave disgruntled companies just because those companies' lawyer demanded it do so. Rather than providing the requested data to D&B, Plaintiffs filed this lawsuit asserting claims for defamation and unfair business practices.

Basic pleading standards and the First Amendment do not allow Plaintiffs' claims to proceed. Plaintiffs' defamation claims based on the scores and ratings in the credit reports fails because they are evaluative opinions that do not convey any provably false facts and are therefore protected by the First Amendment. The new

defamation claims asserted by CIP and RE Carroll in the Proposed Amended Complaint—based on specific facts in the credit reports relating to lawsuits, a judgment, and UCC filings—are not actionable because Plaintiffs have not plausibly pleaded that they are materially false. And Plaintiffs' new theory that D&B is simply lying and its credits reports are not based on any facts at all is unfounded and entirely implausible.

Plaintiffs' UDTPA claims fail as well because the Proposed Amended Complaint does not plead any actual injury beyond Plaintiffs' alleged reputational harm, and Plaintiffs cannot evade the First Amendment protections applicable to their defamation claims by recasting the claims as a different tort.

For all of these reasons, the district court properly granted D&B's motion to dismiss the original Complaint and denied Plaintiffs leave to file their Proposed Amended Complaint as futile. This Court should affirm those rulings.

## ARGUMENT

I. **The district court correctly dismissed and denied leave to amend the defamation claims because Plaintiffs did not plausibly plead a materially false fact.**

Under North Carolina law, a defamation plaintiff bears the burden of pleading and proving that the challenged statement is false. *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 41 (2020). If the plaintiff does not plausibly plead that the statement is materially false, *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269-71 (4th Cir. 2022), or that it can "be reasonably interpreted

12

to . . . imply untrue facts," *Biospherics*, 151 F.3d at 184, dismissal for failure to state a claim is appropriate.

Here, Plaintiffs based their defamation claims on two types of statements in the credit reports: First, they took issue with D&B's ratings, scores, and other statements that evaluate and make predictions about each company's creditworthiness.[6]  Br. at 4-7; JA152-153; JA156; JA158-164.  Second, they contended that three of the credit reports make false statements about lawsuits, a judgment, and UCC filings.[7]  Br. at 8-11; JA153-158.  The district court correctly ruled that none of these challenged statements is actionable.  The first type are constitutionally protected opinions, and D&B's statements about the legal events are true.

---

[6] Specifically, Plaintiffs challenged ratings of "High," "Moderate-High," and "Moderate" in the categories of "Overall Business Risk," "D&B Viability Rating," "Failure Score," and "Delinquency Score."  JA152; JA156; JA159-160; JA162-164.  They also challenged statements such as "significant stability and payment behavior concerns," "higher than average risk of discontinued operations or business inactivity," and "very high potential for severely delinquent payments."  JA 152; *see also* JA156; JA159; JA160; JA162-164.  In addition, they challenged D&B's "Maximum Credit Recommendation" for some of the companies.  JA153; JA161; JA164.

[7] On appeal, this issue pertains only to the CIP and RE Carroll reports, as Plaintiffs have abandoned their argument that the UCC filing referenced in the Carroll Investment credit report "does not exist."  JA159; *see supra* n.3.

13

**A.    D&B's ratings are evaluative opinions that do not convey any provably false facts.**

While there is no "wholesale defamation exemption for anything that might be labeled 'opinion,'" the First Amendment "provides protection for statements that cannot reasonably be interpreted as stating actual facts" about the plaintiff. *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18, 20 (1990) (cleaned up); *see also Snyder v. Phelps*, 580 F.3d 206, 219 (4th Cir. 2009) (courts "emphasize the 'verifiability of the statement,' because a statement not subject to objective verification is not likely to assert actual facts"), *aff'd*, 562 U.S. 443 (2011); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) ("a statement is not actionable unless it asserts a provably false fact or factual connotation").  Whether a statement constitutes protected opinion is a question of law for the court to decide.  *See Biospherics*, 151 F.3d at 183-86; *Lewis v. Rapp*, 220 N.C. App. 299, 304 (2012).

As the district court correctly held, JA119-125, the statements in the credit reports that assess Plaintiffs' creditworthiness—for example, by assigning a "rating," "score," or "risk," JA152-153; JA156; JA159-64 —are inherently subjective and incapable of being proven true or false.  Courts around the country have recognized that this type of statement is "an expression of evaluative opinion rather than verifiable fact."  *NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 53 (Conn. 2020) (holding that vendor ranking was protected opinion); *see also, e.g.*, *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007)

(holding that credit rating was protected opinion); *Aviation Charter, Inc. v. Aviation Rsch. Grp./US*, 416 F.3d 864, 871 (8th Cir. 2005) (holding that safety rating was protected opinion); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 856 (10th Cir. 1999) (holding that bond rating was protected opinion); *ZL Techs., Inc. v. Gartner Grp., Inc.*, 433 F. App'x 547, 548 (9th Cir. 2011) (holding that classification of plaintiff as "Niche Player" in industry was protected opinion).[8]

In *Compuware*, for example, the Sixth Circuit rejected the plaintiff's defamation claim arising from a negative credit rating, holding that it was "a predictive opinion, dependent on a subjective and discretionary weighing of complex factors," that did not convey "any provably false factual connotation." 499 F.3d at 529.  Even if "any fact-based inferences" could be drawn from the

---

[8] *See also, e.g.*, *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*, 2016 WL 3087055, at *3 n.2 (E.D. Va. May 31, 2016) (courts "have universally concluded" that Better Business Bureau grades or "other similar rating[s]" are "non-actionable opinions"); *Mirafuentes v. Estevez*, 2015 WL 8177935, at *3 (E.D. Va. Nov. 30, 2015) (inclusion of plaintiff on list of "10 Most Corrupt Mexicans" was "not objectively verifiable and instead amount[ed] to a subjective assertion"); *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1252-53 (W.D. Wash. 2007) (numerical rating of lawyer could not "be proved true or false"); *Perfect Choice Exteriors, LLC v. Better Bus. Bureau of Cent. Illinois, Inc.*, 99 N.E.3d 541, 551 (Ill. Ct. App. 2018) (Better Business Bureau grade did not convey "any particular, objectively verifiable factual statement" about plaintiff's performance); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 243 (Mo. Ct. App. 2011) (same).

rating, the court explained, "such inferences could not be proven false because of the inherently subjective nature" of making a "ratings calculation." *Id.* In other words, the credit rating was not actionable because it did not connote any "actual, objectively verifiable facts." *Id.*

Likewise, in *Aviation Charter*, the Eighth Circuit held that a safety rating was not "sufficiently factual to be susceptible of being proved true or false" because it was "a subjective interpretation of multiple objective data points leading to a subjective conclusion about aviation safety." 416 F.3d at 871. Although the rating relied "in part on objectively verifiable data, the interpretation of those data was ultimately a subjective assessment, not an objectively verifiable fact." *Id.* at 870.

This Court reached an analogous conclusion in *Biospherics* with respect to an article expressing the opinion that a company's "stock was overvalued." 151 F.3d at 182. It found that "any reasonable" reader "would recognize, based on the tenor, language, and context of the article, that the challenged statements constitute a subjective view, not a factual statement." *Id.* at 186. Plaintiffs attempt to distinguish *Biospherics* by pointing to the "'breezy' tone, unserious title, and 'cute' and 'imprecise, casual language'" of the article in that case, Br. at 52, but the Court did not hold that an irreverent tone is required to qualify as opinion. Indeed, one of the examples of protected opinion cited by the Court was a negative bond rating,

16

much closer in tone to the credit ratings at issue here. *Biospherics*, 151 F.3d at 184 (citing *Jefferson Cnty. Sch. Dist.*, 988 F. Supp. 1341, 1345 (D. Colo. 1997), *aff'd*, 175 F.3d 848).

As the foregoing cases illustrate, ratings and other evaluative statements are protected as opinion regardless of the facts underlying them because reasonable readers understand that they are "inherently and irreducibly subjective." *Netscout*, 223 A.3d at 53. When a defendant chooses "which underlying data to prioritize," performs "a subjective review of those data," and defines terms "relative to its own methodology," as D&B does, its "interpretation" of data is "not sufficiently factual to be susceptible of being proved true or false." *Aviation Charter*, 416 F.3d at 871; *see also Browne*, 525 F. Supp. 2d at 1252 (reasonable consumers understand that ratings assigning abstract numerical values and "fuzzy descriptive phrases like 'superb,' 'good,' and 'strong caution'" are subjective); *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 505 (4th Cir. 2015) ("prediction, or statement about the future" is opinion not capable of "empirical verification" and thus cannot form basis of Lanham Act claim). Indeed, D&B's credit reports are replete with language that discloses the limitations of the underlying data and signals the subjective nature of the analysis. *See, e.g.*, JA187 ("Dun & Bradstreet Thinks…"); JA189 ("Risk Assessment"); JA199 ("D&B currently has no financial information on file for this company").

17

The court decisions on which Plaintiffs rely, *see* Br. at 29-36, do not support their argument that D&B's opinions are actionable. Plaintiffs begin by cherry picking imprecise language from North Carolina cases and the Restatement (Second) of Torts that could be read to suggest that even opinions implying the existence of *true* facts are actionable. *See, e.g.*, Br. at 29-30. But that is obviously not the law. The U.S. Supreme Court made clear in *Milkovich* that an opinion must "imply a *false* assertion of fact" to permit defamation liability to be based on it. 497 U.S. at 19 (emphasis added).

Indeed, in each of the cases Plaintiffs cite, the defamation claim was based on an identifiable false assertion of fact. *See Milkovich*, 497 U.S. at 4-5, 21-22 (article accused plaintiff of committing perjury); *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993) (letter accused company of "infringing on patents" and "defrauding the government"); *Desmond*, 375 N.C. at 67 (article made "the false assertion of fact that an expert in plaintiff's field" held "an opinion critical of plaintiff"); *Davis v. Boeheim*, 24 N.Y.3d 262, 271 (2014) (defendant accused plaintiffs of making "false sexual abuse allegations . . .

in order to get money").[9]  Here, by contrast, Plaintiffs seek to impose liability for

D&B's subjective opinion of their creditworthiness.

Plaintiffs concede that "[i]f D&B simply published the bare opinion that the

Carroll Companies were financially risky, that would be protected opinion."  Br. at

36.  Nonetheless, they erroneously argue that the opinions in the credit reports are

actionable because they "imply underlying facts."  *Id.* at 34.  They point to D&B's

alleged "business model" and marketing materials, which they claim would lead a

reasonable reader to believe that the analyses are "based in facts and data."  *Id.* at

31-33.  They also contend that the text of the credit reports uses language that

conveys "confidence," factual support, and statistical precision.  *Id.* at 33-36.  But

courts have repeatedly rejected this type of argument in defamation cases arising

from ratings and reviews because mere reliance on undisclosed facts to form an

opinion is not enough to make it actionable; rather, a plaintiff must establish that

the opinion itself conveys "actual, objectively verifiable facts" that are false.

*Compuware*, 499 F.3d at 529; *see also, e.g.*, *Seaton v. TripAdvisor LLC*, 728 F.3d

592, 600 (6th Cir. 2013) (statements made by the defendant to "bolster[] the

credibility" of "Dirtiest Hotels" list did not "have any bearing on whether

---

[9] In *Ollman v. Evans*, cited in Br. at 32, the court held that statements about a professor in a newspaper column were protected expressions of opinion.  750 F.2d 970, 971 (D.C. Cir. 1984).  Thus, this decision is also of no help to Plaintiffs.

placement on the list" could "'reasonably be interpreted as stating' an actual fact");

*ZL Techs.*, 709 F. Supp. 2d 789, 797-98 (N.D. Cal. 2010) (defendant's statements

that its rankings were "fact-based and knowledge-centric" and "based on a

'rigorous mathematical model'" were "insufficient to transform the tenor of the

rankings . . . from opinion to fact"), *aff'd*, 433 F. App'x 547; *NetScout*, 334 Conn.

at 422 ("In the defamation context, the speaker's claim to objectivity, whether true

or not, does not turn that speaker's negative statement of opinion about the plaintiff

into an actionable statement of fact."); *Perfect Choice Exteriors*, 99 N.E.3d at 550

(although defendant claimed "to provide objective, unbiased information on

businesses," its "rating was a subjective evaluation based upon the application of

subjective criteria and a subjective interpretation of the facts").

        In this case, Plaintiffs did not identify any objectively verifiable false facts

that are conveyed by the ratings, scores, and assessments of risk in the credit

reports.  To the extent the credit reports imply that Plaintiffs "do not pay their

vendors (or pay them on time), that they lack sufficient credit or resources to

continue in their business, and that they are unable to pay their debts," as Plaintiffs

argue, Br. at 37, the Proposed Amended Complaint contained no plausible, non-

conclusory allegations to refute those implications.  Rather than plead specific

facts that would show the implications are false, Plaintiffs alleged only that each is

an  "established company with solid financials and a strong credit history that

20

promptly satisfies its contractual obligations." JA152. These allegations simply express Plaintiffs' own opinions about their creditworthiness, using the same kind of "fuzzy descriptive phrases" that courts have held to be "not sufficiently factual to be proved or disproved." *Browne*, 525 F. Supp. 2d at 1252. Plaintiffs did not plead any *facts* about their credit histories or financials, nor did they plead that they always satisfy their contractual obligations in a timely manner, or even that they have done so a certain percentage of the time over a particular period of time. Plaintiffs have failed "to identify a specific false statement reasonably implied" from any of D&B's opinions in the credit reports. *Jefferson Cnty. Sch. Dist.*, 175 F.3d at 856; *see also Stevens v. Town of Snow Hill, N.C.*, 2021 WL 2345353, at *7 (E.D.N.C. June 8, 2021) ("Merely labeling a statement as 'false' does not satisfy *Twombly* and *Iqbal*."), *aff'd*, 2022 WL 16707069 (4th Cir. Nov. 4, 2022); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false.").

Plaintiffs argue that their "allegations are as specific as they can be at the pleadings stage" because "D&B *refuses* to provide further information about the facts underlying" the "payment histories" and "credit histories" in the reports. Br. at 37 (emphasis in original). This is an inappropriate effort by Plaintiffs to evade

basic pleading requirements.  Plaintiffs are in possession of all the information they would need to deny whatever it is they contend is falsely implied by the credit reports.  They should have their own records of who they paid, how much they paid, and when.  They should also have records that would show the highest past due amounts they owed to their creditors, the range of credit lines they obtained from lenders, whether they always paid their creditors on time, and whether any of their debts were placed in collections.  If Plaintiffs are "unaware of adequate facts to support a plausible claim for relief," their filing of this lawsuit was improper. Their "inability to marshal additional facts absent discovery cannot save [their] conclusory and speculative allegations from dismissal."  *Desper v. Clarke*, 1 F.4th 236, 249 (4th Cir. 2021).

Finally, in an attempt to liken this case to the North Carolina Supreme Court's decision in *Desmond*, Plaintiffs make the contradictory argument that "the very suggestion that D&B *has* any" facts to support its credit reports "is false."  Br. at 38.  In support of this contention, they quote their wholly conclusory allegations in the Proposed Amended Complaint that the opinions expressed in the credit reports "are 'arbitrary' and 'untethered to any actual or purported factual information.'"  *Id.* (quoting JA151; JA153; JA156; JA159; JA161; JA162; JA164). These allegations are implausible on their face, given that the credit reports disclose various facts that form part of D&B's analysis, including "Legal Events"

22

and "Trade Payments." *See, e.g.*, JA188; JA192-195; *see also United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 199 n.16 (4th Cir. 2022) (courts are "not obliged to accept allegations that represent unwarranted inferences, unreasonable conclusions, or arguments, or that contradict matters properly subject to judicial notice or by exhibit" (cleaned up)).  Plaintiffs offer no allegations to plausibly support their new theory that D&B simply made up its scores and ratings out of whole cloth.

In any event, "the unique factual posture" of *Desmond*, 375 N.C. at 67, is readily distinguishable from this case.  The defamation claims in *Desmond* arose from an article about the plaintiff's work as a firearms expert that falsely attributed criticisms of his work to other experts in the same field.  *Id.*  While some of those statements would have been protected opinion if correctly attributed, the "sting" of the statements was "in the attribution alone—the false assertion of fact that an expert in plaintiff's field holds an opinion critical of plaintiff."  *Id.*  Here, there is no false attribution of opinions to someone other than D&B.  The opinions are D&B's own, and they are fully protected by the First Amendment.  And unlike the plaintiff in *Desmond*, Plaintiffs here do not challenge any statements of *fact*.

The district court properly dismissed Plaintiffs' defamation claims based on D&B's evaluative opinions.

## B.   The statements in the CIP and RE Carroll credit reports about lawsuits, an unsatisfied judgment, and UCC filings are not materially false.

In an effort to save their defamation claims from dismissal, Plaintiffs alleged

for the first time in their Proposed Amended Complaint that certain statements

about lawsuits, a judgment, and UCC filings in the credit reports for CIP and RE

Carroll provide information that was incorrect or outdated at the time of

publication.[10]  JA153-158.  The district court properly denied Plaintiffs leave to

amend on the ground that they failed to plausibly plead that any of these statements

are false.  JA338-339.

A defamation plaintiff cannot meet the burden of proving falsity merely by

pointing to a minor inaccuracy or technical error; rather, the statements must be

*materially* false.  *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014);

*Harvey*, 48 F.4th at 270.  As the U.S. Supreme Court has explained, "[m]inor

inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting,

of the libelous charge be justified.'"  *Masson v. New Yorker Mag., Inc.*, 501 U.S.

496, 517 (1991); *see also Chapin*, 993 F.2d at 1092 ("The falsity of a statement

and the defamatory 'sting' of the publication must coincide—that is, where the

---

[10] Four of the six Plaintiffs—Carroll Industrial, Alaris Homes, Snap Publications, and Carroll Investment—do not assert that D&B published any false information about lawsuits, unsatisfied judgments, or UCC filings in their credit reports.  *See* Br. at 26-28.

24

alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel."); *Desmond*, 375 N.C. at 67 ("[A] plaintiff must establish that 'the sting,' the aspect causing injury to the plaintiff's reputation, is materially false."). To survive a motion to dismiss, the plaintiff must plead "sufficient facts to establish that the statements . . . are materially false." *Harvey*, 48 F.4th at 271.

The district court's denial of leave to amend the Complaint to add claims based on the statements about lawsuits, an unsatisfied judgment, and UCC filings in the CIP and RE Carroll reports was appropriate because Plaintiffs failed to plead facts that would render the statements materially false.

### 1. The credit reports accurately reported information about lawsuits.

First, Plaintiffs complain that the credit reports for CIP and RE Carroll falsely stated that lawsuits are "pending" against them "when each of those lawsuits had already been resolved well before the time of publication." Br. at 8, 27; *see also* JA153-154; JA156-158. This mischaracterizes what the reports actually say. As shown below, the reports accurately state that lawsuits were pending against each company *as of a particular date*, and the reports advise

readers that the status may have changed since that date. The information provided
about the lawsuits is therefore not false at all.

For each entry, the credit reports state that the lawsuit attained the disclosed
status (here, "Pending") on a specified date (as indicated in the "Date Status
Attained" field) and that D&B received the information on a specified date (as
indicated in the "Received Date" field). JA195-196; JA210-211. For example, the
following entry in the CIP report indicates that the lawsuit was pending as of
September 18, 2019 (the day it was filed), and that D&B received the information
about the lawsuit on October 9, 2019:

| Suit - | |
|---|---|
| Filing Date | 09-18-2019 |
| Filing Number | 19 CVS 8625 |
| Status | Pending |
| Date Status Attained | 09-18-2019 |
| Received Date | 10-09-2019 |
| Amount | US$ 316,836 |
| Plaintiffs | U.S. FRAMING INTERNATIONAL LLC |
| Defendant | CIP CONSTRUCTION CO. |
| Defendant | AND OTHERS |
| Court | GUILFORD COUNTY CLERK OF SUPERIOR COURT, GREENSBORO, NC |

JA195.

The district court correctly concluded that Plaintiffs' claims of falsity are
wrong because, for each lawsuit, they acknowledge that the proceeding concluded
*after* the date D&B received the information about its status:

- *Compare* JA195 ("Received Date" of "10-09-2019" for *U.S.
  Framing International* lawsuit) *with* JA154 (alleging that case
  "was disposed of on February 9, 2021");

26

- *Compare* JA195 ("Received Date" of "08-14-2019" for *Lithko Contracting* lawsuit) *with* JA154 (alleging that case "was disposed of on September 11, 2019");

- *Compare* JA196 ("Received Date" of "01-13-2017" for *84 Lumber Company* lawsuit) *with* JA154 (alleging that case "was resolved through arbitration on June 21, 2017");

- *Compare* JA210 ("Received Date" of "02-23-2022" for *Smith* lawsuit) *with* PAC JA157 (alleging that case "was disposed of May 23, 2022);

- *Compare* JA210 ("Received Date" of "11-25-2020" for *Washington* lawsuit) *with* JA157 (alleging that case "was disposed of December 14, 2020);

- *Compare* JA210 ("Received Date" of "03-25-2019" for *Carolina Cleaning* lawsuit) *with* JA157 (alleging that case "was dismissed October 1, 2021");

- *Compare* JA210-211 ("Received Date" of "10-15-2014" for *Jenkins* lawsuit) *with* JA157-158 (alleging that case "was disposed of on November 5, 2014"); and

- *Compare* JA211 ("Received Date" of "05-28-2014" for *Complete Lawn Grounds* lawsuit) *with* JA158 (alleging that case "was disposed of on June 20, 2014").

Thus, D&B's statements about the lawsuits in the CIP and RE Carroll reports are true. They provide accurate information about the status of the proceedings at a snapshot in time.

To reinforce the point that the information provided might have been superseded by events occurring after the "Received Date" and before the reports

27

were published, D&B explained, immediately after the "Legal Events" section:

"The public record items contained in this report may have been paid, terminated,

vacated or released prior to the date this report was printed."[11]  JA197; JA211.

Plaintiffs erroneously assert that these disclaimers are "tucked away" in a "distant

location" from the allegedly false statements, where readers would not see them.

Br. at 41-42.  To the contrary, the disclaimers appear immediately after the last

event listed in the full "Legal Events" section, where readers are likely to see them

when reading about the lawsuits.  JA197; JA211.  Moreover, the very top of the

"Legal Events" section explains that it is "not the official record."  JA 195; JA 209.

Plaintiffs also mischaracterize the "Legal Events" summary that appears

toward the beginning of each report.  This summary simply notes the number

lawsuits (as well as judgments, UCC filings, and other types of legal events) that

appear in the full "Legal Events" section and the last date on which one was filed.

JA188; JA203.  For example, the "Legal Events" summary in the CIP credit report

shows three lawsuits, with the last filed on September 18, 2019:

---

[11] Plaintiffs misleadingly characterize the decision below as relying solely on these disclaimers, Br. at 16, 18, 39, but the district court properly considered D&B's disclosures about when it received each piece of information as well, JA338-339.

| Legal Events | | |
|---|---|---|
| **Events** | **Occurrences** | **Last Filed** |
| Bankruptcies | 0 | - |
| Judgements | 0 | - |
| Liens | 0 | - |
| Suits | 3 | 09-18-2019 |
| UCC | 4 | 10-30-2017 |

JA188.  The summary does not indicate that any of these proceedings are "pending," as Plaintiffs assert.  Br. at 4.  If anything, the summary alerts readers to the fact that the most recent lawsuit was filed nearly three years before the publication of the report in June 2022.  JA188.  A reader who wanted to learn more about the lawsuits would then review the full "Legal Events" section, where the dates when D&B received the information and the disclaimer are located.  JA195-197; JA209-211.  In sum, a reasonable reader reviewing the challenged statements in the CIP and RE Carroll credit reports "within their full context," *Robinson v. Williams*, 59 F.4th 113, 118 (4th Cir. 2023), would understand that the lawsuit information is from a particular point in time and may not be up to date.

To establish material falsity, Plaintiffs must show that the lawsuit information provided in the credit reports "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517; *see also Desmond*, 375 N.C. at 68-69 ("The gist or sting of a statement is true if it produces the same effect on the mind of the recipient

29

which the precise truth would have produced."). They cannot do so. The Proposed

Amended Complaint alleges that the lawsuits against CIP and RE Carroll are no

longer pending, but it does not allege any circumstances about the conclusion of

those lawsuits that would create a more favorable impression in the mind of the

reader. *See* JA154 (alleging simply that lawsuits against CIP were "disposed of"

or "resolved through arbitration"); JA157-158 (alleging that lawsuits against RE

Carroll were "disposed of" or "dismissed" without indicating the circumstances of

the dispositions/dismissals). If D&B had included all of the same information

about the lawsuits in the credit reports but changed the Status field to reflect the

outcomes as pleaded, it would not have a materially different effect on the mind of

the reader. The district court therefore correctly held that Plaintiffs' defamation

claims based on the statements in the credit reports about lawsuits are futile.

JA338.

### 2. D&B accurately reported information about an unsatisfied judgment.

Second, Plaintiffs complain that the RE Carroll report listed the status of a

judgment as "Unsatisfied" when that judgment had been satisfied by the time D&B

published the report. Br. at 27; *see also* JA156-157. Again, the report disclosed

that the judgment information was from a particular point in time (as indicated in

the "Date Status Attained" field) and had not been updated since the date D&B

received this information (as indicated in the "Received Date" field):

| Judgement - Court Judgement | |
|---|---|
| Filing Date | 01-28-2015 |
| Filing Number | 15CVMS5108 |
| Status | Unsatisfied |
| Date Status Attained | 01-28-2015 |
| Received Date | 02-11-2015 |
| Award | US$ 1,498 |
| Debtors | RE CARROLL MGT. CO. |
| Debtors | and OTHERS |
| Creditors | DAVID BECERRA |
| Creditors | SHEENA BECERRA |

JA209.  The judgment appeared in the same "Legal Events" list as the lawsuits, and thus was accompanied by the same explanation that "[t]he public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed."  JA211.  And, as with the lawsuits, Plaintiffs' own proposed pleading demonstrates that the judgment was, in fact, unsatisfied as of the listed "Received Date."  *Compare* JA209 ("Received Date" of "02-11-2015") *with* JA157 (alleging that judgment "was satisfied on January 25, 2017").  D&B's report about the judgment was therefore not false, and the district court properly rejected Plaintiffs' defamation claim based it.  JA338-339.[12]

---

[12] Plaintiffs make much of the fact that the judgment had been satisfied long before June 2022, the date of the credit report.  *See* JA156-157.  But as with all of the legal events in the report, the gist and sting of the statement is that a judgment was entered against the entity.  *Masson*, 501 U.S. at 517.  Readers of the entire credit report would not come away with a materially better impression of the company if they knew it took nearly two years for the company to pay a $1,498 judgment than if they knew it took more years than that.

### 3.    D&B accurately reported information about UCC filings.

Finally, Plaintiffs complain that D&B "falsely attributes liabilities to CIP"

by listing information about UCC filings in its report "when those liens in fact

identify Ascot Point Village Apartments, LLC as the debtor."[13]  Br. at 27; *see also*

JA154-155.  This allegation, too, is demonstrably incorrect according to Plaintiff's

own proposed pleading.

The CIP report accurately states what Plaintiffs allege is true: that the debtor

on each of the UCC filings is "Ascot Point Village Apartments, LLC."  JA196-

197.  For example, the first entry reads:

| **UCC Filing** - Continuation | |
|---|---|
| Filing Date | 10-30-2017 |
| Filing Number | 20170110765A |
| Received Date | 11-06-2017 |
| Original Filing Date | 12-28-2012 |
| Original Filing Number | 20120120144J |
| Secured Party | ARBOR COMMERCIAL FUNDING, LLC, DEPEW, NY |
| Secured Party | ASCOT POINT VILLAGE APARTMENTS, LLC, GREENSBORO, NC |
| Secured Party | FANNIE MAE, DEPEW, NY |
| Debtors | ASCOT POINT VILLAGE APARTMENTS, LLC |
| Filing Office | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |

---

[13] As noted above, Plaintiffs alleged in the Proposed Amended Complaint that two
other UCC filings referenced in the CIP and Carroll Investment do "not exist," but
they never challenged the authenticity of the public records attached to the
Kissinger Affidavit showing that the filings do exist, and they have abandoned the
argument entirely on appeal.  JA154; JA159; *see supra* n.3.  It is thus unclear why
Plaintiffs now contend that the district court "inappropriately" relied on the UCC
filings attached to the Kissinger Affidavit, since those filings do not relate to any
issue on appeal.  Br. at 22-23.  In any event, it is well settled that "a court may
properly take judicial notice of matters of public record without converting a
motion to dismiss into a motion for summary judgment."  *Megaro v. McCollum*, 66
F.4th 151, 157 (4th Cir. 2023).

JA196.  According to North Carolina Secretary of State records, Ascot Point

Village Apartments, LLC, is a domestic limited liability company located at the

same address as CIP and managed by Roy E. Carroll, II, who is also the president

of CIP.[14]  *See* JA334-335.  Plaintiffs disagree with D&B's consideration of the

UCC filings against Ascot Point Village Apartments, LLC in evaluating CIP's

creditworthiness, but the choice of "which underlying data to prioritize" in

reaching its opinion is D&B's to make.  *Aviation Charter*, 416 F.3d at 871.  The

stated facts—that Ascot Point Village Apartments, LLC was named as the debtor

in three UCC filings—are substantially true.  The district court thus properly held

that the statements about UCC filings in the CIP report are not materially false.

## II.     The district court correctly dismissed the UDTPA claims because Plaintiffs have only pleaded reputational harm.

Plaintiffs asserted two UDTPA claims in the Proposed Amended

Complaint.  JA178-182.  The first was based on D&B's alleged publication of false

and defamatory statements about CIP, RE Carroll, and Carroll Investment in the

credit reports.  JA178-179.  The second was based on D&B's alleged business

practices in responding to Plaintiffs' complaints about their credit reports.  JA179-

82.  Both of these claims fail because Plaintiffs cannot avoid the constitutional

protections of defamation law by putting a different label on claims for

---

[14] Plaintiffs did not dispute the authenticity of these records in the district court. *See supra* n.3.

33

defamation-type damages, and Plaintiffs have not pleaded any "actual injury," as the UDTPA requires, other than reputational harm.

### A. Plaintiffs' UDTPA claim based on statements in the credit reports is duplicative of their defamation claims and is not actionable for the same reasons.

This Court has recognized that a plaintiff cannot "recover defamation-type damages under non-reputational tort claims," such as a UDTPA claim, "without satisfying the stricter (First Amendment) standards of a defamation claim." *Food Lion*, 194 F.3d at 522-24) (citing *Hustler*, 485 U.S. 46)). Plaintiffs concede that their first UDTPA claim, based on D&B's alleged publication of false and defamatory statements in three of the credit reports, JA178-179, rises and falls with their defamation claims. Br. at 45-46. Because Plaintiffs' defamation claims are not viable for the reasons set forth above, *see supra* Section I, the district court correctly dismissed their duplicative UDTPA claim as well. JA341 (recognizing that Plaintiffs "cannot do an 'end-run around First Amendment strictures' by seeking relief for the same alleged damages to their reputation that they cannot obtain through their defamation claim.").

### B. Plaintiffs' UDTPA claim based on D&B's business practices fails because they have not pleaded any actual injury other than reputational harm.

Plaintiffs' allegations about D&B's offer of services to them does not save their UDTPA claim because they do not plead that they suffered any injury as a result of any offer to provide services. An "essential element" of a claim for unfair

34

and deceptive trade practices, is "that plaintiff incur actual damage." *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 589 (2003); *see also Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) ("To recover damages [under the UDTPA], a plaintiff must prove he suffered actual injury as a proximate result of defendant['s] conduct."); *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 122 (4th Cir. 2006) (same); *Pearce v. Am. Def. Life Ins. Co.*, 316 N.C. 461, 471 (1986) ("It must be shown that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation."); *Zumkehr v. Hidden Lakes Prop. Owners Ass'n*, 2003 WL 21496467, at *8 (N.C. Ct. App. July 1, 2003) ("Given our conclusion . . . that plaintiff has shown no actual injury, her claim for unfair and deceptive trade practices cannot stand."); *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184 (1980) ("plaintiff must prove not only a violation of G.S. 75-1.1 by the defendants, but also that plaintiff has suffered actual injury as a proximate result of defendants' misrepresentations"); *Mayton*, 45 N.C. App. at 212 (plaintiff did not "prevail[] on the issue of liability" for his UDTPA claim because the jury found that he "suffered no injury," thus "an essential element of his cause of action, i.e., actual injury," was lacking). But for Plaintiffs' UDTPA claim based on D&B's offer of services, they did not allege any non-reputational injury arising from those alleged

business practices aside from the "attorneys' fees incurred in bringing suit to put a stop to D&B's misconduct." JA182.

The district court correctly rejected Plaintiffs' UDTPA claim for failure to plead actual injury. JA340-342. Plaintiffs argue that the district court "viewed their allegations of injury too narrowly," Br. at 49, because it "ignored" their allegations that they had "invested substantial time and money into bringing this lawsuit," as well as writing to D&B "notifying it of inaccuracies" in the credit reports and "demanding D&B cease and desist from publishing the false and defamatory reports," Br. at 50 (citing JA171; JA166). But these alleged injuries are just another measure of reputational damages—Plaintiffs' only reason for taking such actions was to ameliorate the alleged reputational harm of the credit reports.

Plaintiffs' reliance on *Pinehurst, Inc. v. O'Leary Brothers Realty, Inc.*, 79 N.C. App. 51 (1986), to argue that their pre-suit interactions with D&B and legal expenses in bringing this lawsuit constitute "business disruption," "loss of administrative time," and "counsel fees expended" sufficient to plead actual injury, Br. at 49-50, is misplaced. The disruption, lost time, and legal fees identified in *Pinehurst* resulted from legal claims and complaints asserted *against* the plaintiff by dozens of third parties as a result of the defendant's conduct—not from the plaintiff's *own* legal threats or lawsuit against the defendant, as Plaintiffs claim is

sufficient here. *See* 79 N.C. App. at 61. In any event, the passage from which Plaintiffs quote, Br. at 48-50, addressed whether the defendant's conduct in that case "affect[ed] commerce," an entirely separate requirement of the UDTPA, N.C. Gen. Stat. § 75-1.1—not whether the plaintiff had sufficiently established actual injury. *Pinehurst*, 79 N.C. App. at 59, 60-61. The case is inapposite.

Plaintiffs also misstate the holding of *Talbert v. Mauney*, 80 N.C. App. 477 (1986), claiming it stands for the proposition that "'allegations of wrongful and intentional harm to [a plaintiff's] credit rating and business prospects' are sufficient to establish injury for purposes of a UDTPA claim." Br. at 49-50 (quoting *Talbert*, 80 N.C. App. at 481). *Talbert*, too, was discussing a different element of a UDTPA claim. It was addressing whether the defendant's conduct could be considered an unfair business practice under N.C. Gen. Stat. § 75-1.1— not whether the conduct resulted in actual injury. *Talbert*, 80 N.C. App. at 480-81.

Furthermore, as the district court explained, treating attorneys' fees for bringing a UDTPA suit as sufficient to satisfy the "actual injury" element of a claim would not make sense because the statute permits recovery of attorneys' fees only *after* the plaintiff has established a UDTPA violation. *See* N.C. Gen. Stat. § 75-16.1; *see also* JA342 (citing *Mayton*, 45 N.C. App. at 212). Given that actual injury is an "essential element" of a UDTPA claim, *Piedmont Inst. of Pain Mgmt.*, 157 N.C. App. at 589, Plaintiffs' theory is circular. If a UDTPA plaintiff could

satisfy the actual injury requirement merely by pleading that it invested "time and money" bringing a UDTPA claim, that would render the requirement of actual injury superfluous.

Plaintiffs also maintain that nominal damages are available under the UDTPA, but this contradicts a long line of authorities in North Carolina and the Fourth Circuit. *See Sw. Life Ins. Grp. v. Fewkes Mgmt. Corp.*, 245 F. App'x 304, 307 (4th Cir. 2007) ("the district court properly rejected [plaintiff's] unfair trade practices claim because she was unable to prove any actual damages resulting from the violation"); *Kirkman v. Tison*, 2012 WL 4891624, at *11 & n.10 (M.D.N.C. Oct. 15, 2012) (holding that plaintiff could not avoid summary judgment on UDTPA claim "by proposing to substitute nominal damages for actual damages"); *Citibank USA, N.A. v. Ragsdale*, 2009 WL 10705209, at *14 (E.D.N.C. Jan. 30, 2009) (jury award of nominal damages did "not support judgment for plaintiff under the UDTPA as a matter of law" because plaintiff had not proven actual damages); *see also* N.C. Gen. Stat. § 75-16 (affording right of action to corporations only where they are "broken up, destroyed or injured" by actions in violation of UDTPA's terms); N.C.P.I. - Civ. 813.70 ("the plaintiff must prove, by the greater weight of the evidence" that "the plaintiff's business has been injured"). To recover any amount of damages, Plaintiffs must first establish an actual injury. *See Hawkins v. Hawkins*, 101 N.C. App. 529, 532 (1991) ("Certain torts require as

an essential element to a cause of action that plaintiff incur actual damage,"
meaning "some actual loss, hurt or harm resulting from the illegal invasion of a
legal right."), *aff'd*, 331 N.C. 743 (1992); 25 C.J.S. Damages § 16 ("In general, if
actual damage is necessary to the cause of action . . . nominal damages are not
awarded.").

Neither of the cases Plaintiffs cite supports their argument that nominal
damages are available for a UDTPA claim. *See* Br. at 49 (citing *Pinehurst*, 79
N.C. App. at 60-61, and *Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co.*,
2020 WL 1150214, at *7 (M.D.N.C. Mar. 10, 2020)). In *Pinehurst*, although the
appellate court called the $1 damages award "nominal," 79 N.C. App. at 60, it
rejected the defendants' argument that there was no evidence of "actual damage"
because the trial court had found that "defendants' wrongful conduct caused a
disruption of [plaintiffs'] business, loss of administrative time, and injury to their
business reputation," *id.* at 64. In *Hongda*, the appellate court granted remittitur of
a $6 million verdict for a UDTPA claim and reduced the actual damages award to
$1, but recognized that the jury's separate award of nearly $10 million in contract
damages was duplicative of the UDTPA damages and could have been recovered
for the UDTPA claim instead. 2020 WL 1150214, at *6-8 & n.10. The remittitur
was solely to avoid a double recovery. Thus, unlike Plaintiffs here, the plaintiffs in
*Pinehurst* and *Hongda* did establish actual injury resulting from the conduct

alleged to violate the UDTPA. And, to the extent these cases can be read to stand for the proposition that a UDTPA claim could support a nominal damages award without a showing of actual injury, they contradict binding precedent of the North Carolina Supreme Court. *See Pearce*, 316 N.C. at 471.

The district court correctly ruled that Plaintiffs' UDTPA fails as a matter of law because they have not pleaded an actual injury. JA340-342. In light of their failure to meet this "essential element" of their claim, *Piedmont Inst. of Pain Mgmt.*, 157 N.C. App. at 589, Plaintiffs' extensive briefing about D&B's alleged conduct in response to their complaints about the credit reports, *e.g.*, Br. at 11-15, 46-48, is irrelevant.

## CONCLUSION

Plaintiffs are plainly unhappy with the scores and ratings D&B assigned them as of June 2022. But they are unable to point to any *facts* in the challenged credit reports that are false, or to anything that plausibly suggests D&B relied on undisclosed, false facts. They cannot base their lawsuit on unfounded and implausible suspicions that D&B used no factual data in reaching its conclusions. As a matter of law, they have failed to plausibly plead a claim for defamation, and they have failed to plead a claim under the UDTPA for any actual injury other than the same reputational injury that undergirds their failed defamation claims. The district court appropriately dismissed their original Complaint and appropriately

40

concluded that amending the complaint was futile because Plaintiffs did not plead anything to cure these deficiencies in their Proposed Amended Complaint. D&B therefore respectfully requests that the decisions dismissing Plaintiffs' claims with prejudice and denying leave to amend the Complaint be affirmed.

Dated: July 18, 2024          Respectfully submitted,

                             BALLARD SPAHR LLP

                             By: */s/ Ashley I. Kissinger*
                                 Ashley I. Kissinger

                             1225 17th Street, Suite 2300
                             Denver, CO 80202-5596
                             Telephone: 303.376.2407
                             Facsimile: 303.296.3956
                             E-mail: kissingera@ballardspahr.com

                             Elizabeth Seidlin-Bernstein
                             1735 Market Street, 51st Floor
                             Philadelphia, PA 19103-7599
                             Telephone: 215.988.9774
                             Facsimile: 215.864.8999
                             E-mail: seidline@ballardspahr.com

                             Elizabeth Schilken
                             2029 Century Park East, Suite 1400
                             Los Angeles, CA 90067-2915
                             Telephone: 424.204.4371
                             Facsimile: 424.204.4350
                             E-mail: schilkene@ballardspahr.com

OFFIT KURMAN, P.A.

Robert B McNeill
301 South College Street, Suite 2600
Charlotte, NC 28202-6006
Telephone: 704.377.2500
Facsimile: 704.372.2619
E-mail: robert.mcneill@offitkurman.com

*Attorneys for Defendant-Appellee*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [X] this brief contains 9,321 words

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

Dated: July 18, 2024                    */s/ Ashley I. Kissinger*
                                        Ashley I. Kissinger

43