**RECORD NO. 24-1342**

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

RE CARROLL MANAGEMENT COMPANY, CIP CONSTRUCTION
COMPANY, CARROLL INDUSTRIAL DEVELOPMENT US, LLC, ALARIS
HOMES, INC., SNAP PUBLICATIONS, LLC, and CARROLL INVESTMENT
PROPERTIES, INC.,

*Plaintiffs-Appellants*,

v.

DUN & BRADSTREET, INC.,

*Defendant-Appellee*,

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

Eric M. David
Andrew L. Rodenbough
Pearson G. Cost
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, L.L.P.
Post Office Box 1800
Raleigh, North Carolina 27602
Telephone: (919) 839-0300
*Attorneys for Plaintiffs-Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

ARGUMENT ............................................................................................1

I.    D&B addresses a strawman argument by relying on inapposite and unpersuasive cases ..................................................................3

II.   D&B's attempts to distinguish *Milkovich* and *Desmond* fail .........................6

III.  D&B's flawed interpretation of its statements regarding lawsuits, a judgment, and UCC filings demonstrates the Proposed Amended Complaint's sufficiency ..................................................................8

      A.   The Credit Reports should be considered from the perspective of a regular reader, not a judge or lawyer ..............................8

      B.   A reasonable reader would understand "pending" to mean currently pending and "unsatisfied" to mean currently unsatisfied..................................................................9

      C.   D&B's false statements are material..................................13

IV.   The Carroll Companies plausibly allege false implied assertions of fact ......................................................................................14

      A.   The Proposed Amended Complaint plausibly alleges implied facts, which makes the Credit Reports actionable "mixed opinions" .....................................................................15

      B.   The Proposed Amended Complaint plausibly alleges the falsity of these implied facts..............................................17

      C.   D&B's false statements and implications about UCC filings are actionable "mixed opinions" ............................................19

V.    The Carroll Companies plausibly allege that D&B misrepresents the existence of supporting facts ..........................................................20

VI.   The Proposed Amended Complaint sufficiently alleges injury for unfair and deceptive trade practices ............................................21

i

CONCLUSION ........................................................................................25

CERTIFICATE OF COMPLIANCE ...................................................................27

# TABLE OF AUTHORITIES

## Cases

*Aviation Charter, Inc. v. Aviation Rsch. Grp./US,*
    416 F.3d 864 (8th Cir. 2005).............................................. 3, 4, 5, 19, 20

*Biospherics, Inc. v. Forbes, Inc.,*
    151 F.3d 180 (4th Cir. 1998)..............................................................5

*Bell v. Simmons,*
    247 N.C. 488 (1958)........................................................................11

*Celle v. Filipino Reptr. Enters. Inc.,*
    209 F.3d 163 (2d Cir. 2000)...............................................................9

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.,*
    273 F. Supp. 2d 914 (E.D. Mich. 2002).............................................4

*Compuware Corp. v. Moody's Inv'rs. Servs., Inc.,*
    499 F.3d 520 (6th Cir. 2007)................................................. 3, 4, 5, 6

*Design Res., Inc. v. Leather Indus. of Am.,*
    789 F.3d 495 (4th Cir. 2015)...........................................................13

*Desmond v. News & Observer Publishing Co.,*
    375 N.C. 21 (2020)................................................................. 6, 7, 12

*Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co., Ltd,*
    No. 1:12-CV-1146, 2020 WL 1150214 (M.D.N.C. Mar. 10, 2020)...............24

*Koolvent Aluminum Prod., Inc. v. Azrael, Gann & Franz,*
    52 F.3d 321, 1995 WL 227351 (4th Cir. 1995) ................................8

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990) ................................................................. 6, 7, 19

*Mirafuentes v. Estevez,*
    No. 1:15-cv-610, 2015 WL 8177935 (E.D. Va. Nov. 30, 2015) .......................3

*NetScout Sys., Inc. v. Gartner, Inc.,*
    223 A.3d 37 (Conn. 2020)...................................................... 3, 4, 5, 6

*Netscout Sys., Inc. v. Gartner, Inc.*,
No. FSTCV146022988S, 2015 WL 9897705 (Conn. Super. Ct.
Dec. 15, 2015) ...............................................................................4

*Pinehurst, Inc. v. O'Leary Bros. Realty*,
79 N.C. App. 51 (1986).............................................................. 23, 24

*Renwick v. News & Observer Pub. Co.*,
63 N.C. App. 200 (1980)................................................................12

*Stanton v. Metro Corp*,
438 F.3d 119 (5th Cir. 2006)...........................................................9

*Swengler v. ITT Corp. Electro-Optical Prod. Div.*,
993 F.2d 1063 (4th Cir. 1993).......................................................16

*Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*,
773 F.3d 58 (8th Cir. 2014)............................................................3

*Talbert v. Mauney*,
80 N.C. App. 477 (1986).......................................................... 23, 24

*Walker v. Sloan*,
137 N.C. App. 387 (2000)..............................................................22

## Statutes

N.C. Gen. Stat. § 75-1.1 .................................................................21

## Rules

Fed R. Civ. P. 12(b)(6)....................................................................1

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ....................................10

Cambridge Bus. Eng. Dictionary (1st ed. 2011)........................10

## ARGUMENT

Defendant Dun & Bradstreet, Inc. ("D&B") invites this Court to walk the same erroneous path the district court walked by misapplying the Rule 12(b)(6) "plausibility" standard to question the truth of the Carroll Companies' well-pleaded factual allegations and to draw material inferences in favor of D&B. This Court should decline the invitation.

The Court also should not accept D&B's attempt to re-frame the gravamen of the Carroll Companies' Proposed Amended Complaint. This case is not about whether D&B's ratings "scores" themselves are protected opinion. Standing alone, they might be; but here, D&B supported its ratings scores with express factual assertions and with the implication that additional undisclosed facts support the scores. The Carroll Companies plausibly allege that D&B's express assertions of fact are wrong, that the implied facts underlying the scores are false or even nonexistent, and that as a result the Credit Reports reflect actionable libel.

Rather than take these allegations head on, D&B dissembles and distracts. With respect to the express assertions of fact, D&B attempts to re-write the Credit Reports by contorting their plain language beyond the understanding of a reasonable reader. In D&B's topsy-turvy dictionary, simple words like "pending" and "unsatisfied" take on nuanced, lawyer-made meanings created for litigation

1

purposes. But at the pleadings stage, courts are not allowed to re-write or re-define the unambiguous words on the page as D&B urges.

With respect to the implied but undisclosed facts, D&B argues that the Carroll Companies do not specifically allege how those facts are false. But D&B never explains how the Carroll Companies could possibly allege the falsity of undisclosed facts with greater specificity. Moreover, D&B's argument is a red herring. Under well-settled law, where a so-called opinion is supported by false and defamatory implied facts, it loses constitutional protection. Here, the Carroll Companies allege, in great detail, that D&B's ratings are entirely false. D&B implies or states in the Credit Reports that the Carroll Companies are not creditworthy, do not pay their bills, and are at risk of insolvency; the Carroll Companies allege that these facts are false and explain the financial strength and viability of the businesses. Under *Twombly* and *Iqbal*, that is more than enough to state a defamation claim.

In sum, the Carroll Companies' Proposed Amended Complaint plausibly alleges false assertions of express facts, false assertions of implied facts, and false assertions that supporting facts exist, each of which, on its own, is sufficient to sustain a defamation claim. And finally, the Proposed Amended Complaint sufficiently alleges injury for unfair and deceptive trade practices based on D&B's attempts to coerce the Carroll Companies into purchasing a D&B subscription.

## I.  D&B addresses a strawman argument by relying on inapposite and unpersuasive cases.

D&B spends the first twelve pages of its argument trying to convince the Court that its ratings scores are non-actionable opinion, but it is ultimately arguing against a strawman. This case does not turn on whether, for example, D&B's "viability score" for the Carroll Companies should be an 8 or a 1. If it did, the cases D&B relies on might be persuasive. But instead, those cases entirely miss the mark.

Each of D&B's primary cases concerns a pure opinion, with no allegations of false and defamatory supporting facts. *See, e.g., Aviation Charter, Inc. v. Aviation Rsch. Grp./US,* 416 F.3d 864, 870 (8th Cir. 2005) ("comparative rating"), *abrogation recognized in Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, 773 F.3d 58, 64 (8th Cir. 2014); *NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 52 (Conn. 2020) ("Magic Quadrant" grid); *Mirafuentes v. Estevez*, No. 1:15-cv-610, 2015 WL 8177935, at *3 (E.D. Va. Nov. 30, 2015) ("10 Most Corrupt Mexicans"). Moreover, several of D&B's cases involve motions for summary judgment, not Rule 12 motions. *See, e.g., Aviation Charter*, 416 F.3d 864; *Netscout,* 223 A.3d 37; *Compuware Corp. v. Moody's Inv'rs. Servs., Inc.*, 499 F.3d 520 (6th Cir. 2007).

In *NetScout*, the court affirmed summary judgment where the alleged defamation focused on where the defendant placed the plaintiff company on its "Magic Quadrant" rating matrix. 223 A.3d at 52. Unlike here, the plaintiff in *Netscout* did not challenge the truth of underlying factual assertions (express or

implied). Moreover, the court in *Netscout* was assessing the claim after discovery. *Id.* Tellingly, D&B failed to note that the trial court had *denied* the defendant's motion to dismiss the complaint, rejecting the exact same arguments offered by D&B. *See Netscout Sys., Inc. v. Gartner, Inc*., No. FSTCV146022988S, 2015 WL 9897705, at *9 (Conn. Super. Ct. Dec. 15, 2015).

In *Aviation Charter*, the court likewise affirmed a summary judgment decision. 416 F.3d at 866. The court held that the defendant's "interpretation of those data was ultimately a subjective assessment, not an objectively verifiable fact." *Id.* at 870. Not only did the court heavily rely on the facts from discovery, it dealt with the overarching rating rather than any express or implied facts.

In *Compuware*, the court affirmed summary judgment in an appeal focused on actual malice. 499 F.3d at 522. As with *Netscout*, D&B failed to note that the defamation claim had survived a motion to dismiss. *See Compuware Corp. v. Moody's Inv'rs Servs., Inc*., 273 F. Supp. 2d 914, 915 (E.D. Mich. 2002). D&B cites the appellate court's statement that the rating was "'a predictive opinion, dependent on a subjective and discretionary weighing of complex factors,' that did not convey 'any provably false factual connotation.'" Brief of Defendant-Appellee ("D&B's Br.") 15. But D&B ignores the court's qualification of its reasoning introducing the same paragraph: "To the extent Compuware alleges that the *credit rating itself* was defamatory, *as opposed to the facts or implications in the report . . .*" *Compuware*,

499 F.3d at 529 (second emphasis added). Because the language D&B quotes does not address stated or implied facts underlying a "credit rating," it is therefore irrelevant to the analysis of such facts, especially at the Rule 12 stage.

D&B also urges the Court to affirm the lower court's erroneous interpretation of *Biospherics, Inc. v. Forbes, Inc.* 151 F.3d 180 (4th Cir. 1998). There, a magazine advice column with a "breezy" tone, unserious title, and "cute" and "imprecise, casual language" was deemed a subjective opinion. *Biospherics*, 151 F.3d at 184-86. Although D&B attempts to deemphasize the importance of the tone of the text in *Biospherics*, this Court made clear that "context" and "general tenor" is material to a First Amendment analysis, even distinguishing other cases based on those factors. *Id.* at 184, 186. In contrast to *Biospherics*, the Credit Reports are paid analyses advising businesses on the financial stability of the Carroll Companies, not "breezy," "cute," or "casual" articles.

D&B's own cases also make clear that the underlying rationale for holding that many scores and ratings are protected opinion is that they are "inherently and irreducibly subjective." D&B's Br. 17. The implications of fact alleged here, however, make that rationale inapplicable because they are "sufficiently factual to be susceptible of being proved true or false." *See Aviation Charter*, 416 F.3d at 871. Because these implications are not "inherently and irreducibly subjective" and are "sufficiently factual to be susceptible of being proved true or false," they are not

protected opinion. *See, e.g., Netscout*, 223 A.3d at 51 ("Liability for [defamation] may attach, however, when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader."); *Compuware*, 499 F.3d at 528 (analyzing "a claim for defamation when discrete facts . . . are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way" (citation omitted)).

In sum, this Court must reject D&B's proposed blanket rule that *all* ratings are protected opinion "regardless of the facts underlying them." D&B's Br. 17 (citing *NetScout*, 223 A.3d at 53). As D&B's own cases acknowledge, ratings can lose their status as protected opinion by implying facts, presenting false facts, or having no facts. The Credit Reports do all three. Accordingly, the trial court erred in rejecting the Proposed Amended Complaint.

## II. D&B's attempts to distinguish *Milkovich* and *Desmond* fail.

D&B's attempt (D&B's Br. 18-21) to steer clear of the two cases that control the outcome here—*Milkovich v. Lorain Journal Co*., 497 U.S. 1 (1990), and *Desmond v. News & Observer Publishing Co.*, 375 N.C. 21 (2020)—misconstrues those cases and mischaracterizes the Carroll Companies' claims.

In *Milkovich*, the Supreme Court held:

> If a speaker says, "In my opinion John Jones is a liar," he implies
> a knowledge of facts which lead to the conclusion that Jones told

6

an untruth. Even if the speaker states the facts upon which he bases his opinion, *if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fac*t. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

497 U.S. at 18-19 (emphasis added). Here, the Credit Reports state facts regarding "pending" lawsuits, an "unsatisfied" judgment, and UCC filings that are "incorrect or incomplete." *See, e.g.,* JA153-157. And D&B's "assessment of [those facts] is erroneous," so its purported "opinions" also imply a false assertion of fact. As such, no matter how D&B frames the question, under *Milkovich*, D&B's express and implied facts are actionable despite being cloaked in a statement of "opinion."

In *Desmond*, the North Carolina Supreme Court likewise held that implied factual assertions can defame the plaintiff on multiple levels. 375 N.C. at 68. There, the court held that the defamatory sting in the statement "is not only in the attribution, but also in the underlying assertion of fact." *Id.* Here, the defamatory sting of the Credit Reports is felt not only in the "incorrect or incomplete facts" but also in the erroneous assessment of those facts. The ratings scores are propped up by expressly stated facts and by implied but undisclosed facts. The Carroll Companies plausibly allege that those express and implied facts are false.

Finally, D&B negates its own attempt to distinguish *Milkovich* and *Desmond* by conceding that the Credit Reports imply that the Carroll Companies do not pay

7

their vendors on time, lack sufficient resources to stay in business, and are unable to pay their debts. D&B's Br. 20. Thus, by D&B's own admission, the Proposed Amended Complaint alleges the false assertions of fact—both implied and express— that D&B claims are lacking.

### III. D&B's flawed interpretation of its statements regarding lawsuits, a judgment, and UCC filings demonstrates the Proposed Amended Complaint's sufficiency.

Under *Milkovich* and *Desmond*, the material issue is whether the Credit Reports' statements about "pending" lawsuits, an "unsatisfied" judgment, and UCC filings are capable of an interpretation that does not produce the same effect as the *precise truth*. If they are, the district court's ruling must be reversed.

#### A. The Credit Reports should be considered from the perspective of a regular reader, not a judge or lawyer.

In its brief, D&B asks the Court to make the same mistakes the lower court made by drawing inferences in D&B's favor and reading the Credit Reports too technically and with the benefit of extra-textual explanation. What the district court should have done, and what this Court must do, is consider allegedly defamatory statements from the perspective of a layperson who reads the statement, not the perspective of a lawyer or judge. *See Koolvent Aluminum Prod., Inc. v. Azrael, Gann & Franz*, 52 F.3d 321, 1995 WL 227351, at *3 (4th Cir. 1995) (unpublished) ("[T]he district court erred by reading the letter too technically, *i.e.,* from the perspective of a lawyer reading a contract rather than the perspective of a layperson reading a letter

sent to his home."); *Celle v. Filipino Reptr. Enters. Inc.,* 209 F.3d 163, 177 (2d Cir. 2000) ("[T]he words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed." (cleaned up)); *Stanton v. Metro Corp*, 438 F.3d 119, 127 (5th Cir. 2006) (holding that "it is not dispositive that a numerical majority of its audience would arrive at a non-defamatory interpretation").

### B. A reasonable reader would understand "pending" to mean currently pending and "unsatisfied" to mean currently unsatisfied.

D&B does not contest—and cannot contest—that as of the date of publication of the Credit Reports, the lawsuits it described as "pending" were not in fact pending, the judgment it described as "unsatisfied" was in fact satisfied, and the UCC filings it attributes to CIP in fact have no connection to CIP. Those are each provably false statements of fact (not opinion) that were sufficient for the Proposed Amended Complaint to survive.

To avoid that conclusion, D&B makes the unpersuasive argument that these statements are substantially true (or only immaterially false) by relying on unreasonable definitions of simple words and by blue-penciling the text of the Credit Reports to say things they don't actually say. In its brief, D&B provides this Court with the same extra-textual, lawyer-written narration of the Credit Reports it gave to the trial court, the end result of which is to twist the meaning of the word "pending" beyond recognition. D&B's Br. 26.

One example of the relevant text is below:

> **Suit** –
> | | |
> |---|---|
> | **Filing Date** | 09-18-2019 |
> | **Filing Number** | 19 CVS 8625 |
> | **Status** | Pending |
> | **Date Status Attained** | 09-18-2019 |
> | **Received Date** | 10-09-2019 |

JA195.

Under D&B's contorted explanation of this text, readers should apparently know (though it is not stated) that the reported "Status" of the lawsuit (i.e., "Pending") is as of the "Received Date" and *not* as of the date of publication. Moreover, according to D&B, readers should apparently know that the "Received Date" is the *last date* D&B received *any* information about the "pending" lawsuit. But no reasonable reader—having been sold on D&B's products by its promise of continuously updated data—would share this understanding. A more reasonable interpretation of the text is that on October 9, 2019, D&B received information about a lawsuit that was filed on September 18, 2019, and that the lawsuit is currently "pending." This interpretation is supported by both legal and non-legal dictionaries. *See Pending*, Cambridge Bus. Eng. Dictionary (1st ed. 2011) ("[W]aiting to be decided or approved"); *Pending*, Black's Law Dictionary (12th ed. 2024) ("Remaining undecided; awaiting decision").

With respect to the purportedly "unsatisfied" judgment against CIP, the relevant text is below:

> **Judgement [sic]** – Court Judgement [sic]
>   **Filing Date**              01-28-2015
>   **Filing Number**            15CVM5108
>   **Status**                   Unsatisfied
>   **Date Status Attained**     01-28-2015
>   **Received Date**            02-11-2015

JA209.

Any reasonable reader would understand the text to mean that on February 11, 2015, D&B received information about a judgment that was filed on January 28, 2015, and remains unsatisfied. Not—as D&B claims—that the judgment could have been satisfied at any time since February 11, 2015, because D&B has not attempted to update its information in the many years since.

Whether D&B's interpretation of these texts or the Carroll Companies' interpretation of these texts is more reasonable is a question for the jury. *Bell v. Simmons*, 247 N.C. 488, 495 (1958) ("It is noted: '(1) The court determines whether a communication is capable of a defamatory meaning. (2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient.'" (quoting Restatement (First) of Torts § 614)). At this stage what matters is that the Carrol Companies allege a plausible interpretation that is false and defamatory. The fact that D&B needed ten pages of contract-like legal analysis to explain its intended meaning of "pending" and "unsatisfied" illustrates the Credit Reports' ambiguity and the Proposed Amended Complaint's viability. D&B's Br. 24-33.

D&B's vague disclaimer does not change this analysis. Several pages after the lawsuits are first summarized in the Credit Reports, and mixed in with other intellectual property legalese, D&B says the following:

> The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed. This information may not be reproduced in whole or in part by any means of reproduction.

*E.g.,* JA197.

From this, D&B divines an exculpatory disclaimer, but in reality the text is so vague that it is meaningless. The words "lawsuit" or "judgment" are not included, and the explanation that D&B provides in its brief—that the "Received Date" means the last date D&B received any information about any "pending" lawsuit or "unsatisfied" judgment—is likewise nowhere in the text.

D&B also suggests that the statement that the information in the Credit Reports may have changed "prior to the *date this report was printed*" in fact is sufficient to convey that the "information provided might have been superseded by events occurring after the 'Received Date.'" D&B's Br. 27 (emphasis added). This argument is yet another example of D&B asking the court to infer language that appears nowhere in the Credit Reports themselves. But in any event, as explained in the Carroll Companies' opening brief, whether this disclaimer is sufficient to make the Credit Reports "substantially true" is a jury question. *Desmond*, 375 N.C. at 69;

*Renwick v. News & Observer Pub. Co.*, 63 N.C. App. 200, 210–11 (1980), *rev'd on other grounds*, 310 N.C. 312 (1984).

As one of D&B's own cases suggests, this Court should decline D&B's invitation to "follow [its] winding inquiry far outside the face of the [Credit Report]" and should not "be willing to accept that the [report] means the opposite of what it says." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 502 (4th Cir. 2015). The Proposed Amended Complaint plausibly alleges that the Credit Reports' statements about lawsuits and judgments are capable of being understood as false, which is enough—on its own—to mandate reversal of the trial court's order.

### C. D&B's false statements are material.

D&B also makes the meritless argument that, even if the Credit Reports' statements about pending lawsuits and unsatisfied judgments are false, they are not *materially* false. D&B's Br. 29-30. According to D&B, it would make no meaningful difference to a reader of the Credit Reports—who has purchased the reports to learn about the credit-worthiness and financial strength of the Carroll Companies—whether the company has eight pending lawsuits and one unsatisfied judgment or no pending lawsuits and no unsatisfied judgments. D&B cites no authority for this argument because there is none.

Any person who has ever applied for credit (and any lender) would agree that there is a material difference between judgments that are currently unsatisfied and

those that were satisfied long ago, and a material difference between pending lawsuits and those that were resolved long ago. In reality, there is no dispute that *accurate* information about pending lawsuits and unsatisfied judgments is material to D&B readers; D&B says so itself in its marketing materials (JA142-143) and then again in its brief (D&B's Br. 22-23) (noting that the Legal Events "form part of D&B's analysis").

If D&B now contends that its factual errors are *not* material to its readers, it should have to make that argument to the jury, not to the court at the pleading stage.

## IV.  The Carroll Companies plausibly allege false implied assertions of fact.

In addition to their express false statements of fact, the Credit Reports imply that they are supported by undisclosed facts, which the Carroll Companies plausibly allege are false and defamatory. For example, the Carroll Companies allege:

> 59.    As of June 2022, each Plaintiff's business credit report falsely portrays the Plaintiff as a poor credit risk due to poor payment history, outstanding judgments or UCC liens, and other vaguely referenced circumstances purported to be known to D&B but not specified in the business credit report. Upon information and belief, D&B's statements regarding each Plaintiff's stability and credit-worthiness are completely arbitrary and are untethered to any actual or purported factual information.

> 60.    The payment experiences set forth in each Plaintiff's D&B business credit report represent only a small fraction of each Plaintiff's commercial and transactional activities. Upon information and belief, D&B knows and intends that purported payment experiences listed in a given Plaintiff's

14

business credit report grossly understate and misrepresent that Plaintiff's commercial activities and payment history.

61.     As set forth in detail below, D&B's business credit reports arbitrarily and falsely portray each Plaintiff as financially unstable and likely to default on its obligations to lenders and business partners. In fact, exactly the opposite is true. Each and every Plaintiff is an established company with solid financials and a strong credit history that promptly satisfies its contractual obligations.

JA151-152.

The allegations are straightforward and compelling. Based on both express and implied facts, D&B has reported that the Carroll Companies do not pay their vendors on time, lack sufficient resources to stay in business, and are unable to pay their debts. Those facts are provably false, as the Carroll Companies allege. JA152 ("Each and every Plaintiff is an established company with solid financials and a strong credit history that promptly satisfies its contractual obligations.").

D&B brushes these allegations aside, calling them "conclusory" and asserting that under *Twombley* and *Iqbal* more is required. This argument is unavailing.

## A. The Proposed Amended Complaint plausibly alleges implied facts, which makes the Credit Reports actionable "mixed opinions."

The Carroll Companies allege, and D&B concedes, that the Credit Reports imply that the Carroll Companies "do not pay their vendors (or pay them on time), that they lack sufficient credit or resources to continue in their business, and that they are unable to pay their debts." D&B's Br. 20; *see* JA151-152; *see also* Brief of

Plaintiffs-Appellants 34 ("low proportion of *satisfactory payment experiences* to total payment experiences," "*evidence* of negative trade," "proportion of slow payment experiences to total number of *payment experiences reported*," and "*payment information* indicates negative payment comments." (citing JA190)).

These implications are discussed and highlighted throughout the Credit Reports, as the Proposed Amended Complaint alleges. *E.g.,* JA152 ("VERY HIGH POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS."); JA155 ("Some of the payment experiences state that CIP 'Pays Slow.'"); JA160 ("[T]he Carroll Investment Report identifies "'low proportion of satisfactory payment experiences' as a negative factor in determining Carroll Investment's 'Failure Score,' falsely portraying Carroll Investment as having a 'moderate-high' risk of failure in the next 12 months."); JA161 ("Further, the Carroll Industrial Report gives a 'Maximum Credit Recommendation' of only $5,000, purportedly 'based on a moderate probability of severe delinquency.'").

Thus, there is no dispute that the ratings in the Credit Reports are based on implied but undisclosed facts. This makes them actionable. *See, e.g.*, *Swengler v. ITT Corp. Electro-Optical Prod. Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993) ("Statements clearly implying the existence of facts are actionable as defamation.").[1]

---

[1] D&B attempts to distinguish *Swengler* by claiming that the defendant in that case made factual allegations. But D&B ignores that the *Swengler* court explicitly

**B. The Proposed Amended Complaint plausibly alleges the falsity of these implied facts.**

Although D&B concedes that the Credit Reports imply facts, it contends that the Proposed Amended Complaint does not plausibly allege that the implied facts are false because "Plaintiffs did not plead any *facts* about their credit histories or financials, nor did they plead that they always satisfy their contractual obligations in a timely manner, or even that they have done so a certain percentage of the time over a particular period of time." D&B's Br. 21 (emphasis in original).

D&B's argument that the Carroll Companies cannot *prove* the falsity of these statements and implications is both wrong and irrelevant, as the Carroll Companies' burden at this stage is *pleading*, not proving. D&B argues that to satisfy *Twombley* and *Iqbal*, the Carroll Companies must allege detailed (confidential) information about the finances of their entire businesses (given the breadth of the implied assertions). In so doing, D&B seeks to unfairly benefit from its refusal to share any of the underlying information. For example, the Carroll Companies have no idea— because D&B refuses to disclose—what vendors (if any) reported on their trade payment experiences with the Carroll Companies. As such, the Carroll Companies cannot allege that a specific trade payment entry is false. D&B's suggestion that the

---

discussed the statements at issue (including that the plaintiff "posed a serious security risk" and was "defrauding the government") as "mixed opinions" and not as simple factual assertions. *Swengler*, 993 F.2d at 1071.

Carroll Companies must instead disclose details of every payment they have ever made to dispute the truth of D&B's statements has no legal basis.

That supposed trade payment information informs the implication that the Carroll Companies are a poor credit risk facing imminent default, and the Carroll Companies specifically and sufficiently allege that the information is false. The Proposed Amended Complaint states that "[e]ach and every Plaintiff is an established company with solid financials and a strong credit history that promptly satisfies its contractual obligations." JA152. And to the extent the Credit Reports include purported factual support, the Carroll Companies plausibly allege its falsity. The Carroll Companies allege the Credit Reports' financial and legal information is false and/or does not support the implications by specifically refuting each component of the Legal Events sections. JA154-165. If discovery bears out these allegations (as it will), the Credit Reports' implications regarding paying vendors, lacking credit or resources, and potential insolvency are necessarily false.

In other words, the Proposed Amended Complaint pleads falsity generally (stating each company "is an established company with solid financials and a strong credit history" (JA152)), and specifically (refuting most of the stated supporting facts (JA154-165)). Without knowing the rest of the Credit Reports' supposed underlying data, the Carroll Companies cannot possibly refute it to any further degree of detail, nor are they required to at this stage of litigation.

### C. D&B's false statements and implications about UCC filings are actionable "mixed opinions."

D&B's discussion of purported UCC filings in the "Legal Events" section of the CIP Credit Report (JA196-197) highlights how the Credit Reports are actionable "mixed opinions." The district court correctly noted that these UCC entries list the debtor as Ascot Point Village Apartments, LLC, not CIP. But the district court erred when it held that these statements were not actionable because the Carroll Companies only "challenge[] Dun & Bradstreet's evaluation process in forming its opinions that these liens are linked to a plaintiff." JA339.

By connecting the UCC filings for a wholly separate entity to the Credit Report for CIP, D&B implies that it has undisclosed factual information that makes such a connection accurate. In the Proposed Amended Complaint, the Carroll Companies describe this implication and specifically allege that it is false because, among other things, "Ascot is a separate and distinct entity from CIP." JA154-155. Under *Milkovich*, these allegations state an actionable claim for libel because the Carroll Companies allege that D&B's connection of the Ascot Point UCC filings to CIP is "incorrect or incomplete" and D&B's "assessment of [that connection] is erroneous." *Milkovich*, 497 U.S. at 18-19.

D&B's argument that "the choice of 'which underlying data to prioritize' in reaching its opinion is D&B's to make" (D&B's Br. 33 (citing *Aviation Charter*, 416 F.3d at 871)) ignores the allegations that the underlying data is false. *Aviation*

19

*Charter* does not suggest that D&B is immunized against prioritizing false data in making its "assessment." In fact, the cited portion of *Aviation Charter* did not even consider the truth of the underlying data. Additionally, the court in *Aviation Charter* heavily relied on facts from discovery and dealt with the rating itself rather than any express or implied facts. *See Aviation Charter*, 416 F.3d at 871.

Contrary to D&B's argument, reliance on its "evaluation process" is not a get-out-of-jail-free card. Where, as here, D&B indicates it has undisclosed factual information supporting its evaluation, that evaluation is an actionable mixed opinion.

## V. The Carroll Companies plausibly allege that D&B misrepresents the existence of supporting facts.

D&B labels as "wholly conclusory" the Carroll Companies' allegations that the Credit Reports are arbitrary and untethered to any actual factual data, and it asserts that the Carroll Companies' allegation that D&B "made up its scores and ratings out of whole cloth" is not plausible. D&B's Br. 22-23. But D&B's argument founders on its own admissions.

Both in the district court and in its opening brief, D&B pointed to the fact that the Credit Reports, in their very last line (in light gray text), say that "D&B currently has no financial information on file for this company." *E.g.,* JA199. That statement is consistent with the allegations of the Proposed Amended Complaint, which state that the Carroll Companies refused D&B's request to disclose confidential financial information. JA167-169; JA151. It is therefore not only "plausible," it is entirely

likely that D&B's ratings are not connected to any factual financial data but instead are supported by false and outdated non-financial information.

D&B cannot have its cake and eat it too. It cannot on one hand point to the disclosure that it has no financial information for the Carroll Companies as exculpatory, while on the other hand asserting that the allegation that its ratings are made up out of whole cloth is "conclusory" and implausible.

## VI. The Proposed Amended Complaint sufficiently alleges injury for unfair and deceptive trade practices.

D&B does not dispute that the Fifth Claim for Relief—a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq*. based on defamation—cannot be dismissed if any defamation claim survives. And with respect to the Sixth Claim for Relief, D&B does not dispute that its use of false credit reports "as leverage to induce companies to pay for D&B's subscription services in hopes of improving their scores and ratings" (JA180) is unfair and deceptive— unsurprisingly so, given that the Federal Trade Commission has already found those exact practices to be unfair and deceptive (JA168, JA269-285). Instead, D&B premises its arguments solely on the contention that the Carroll Companies failed to sufficiently allege that they were injured by D&B's unfair and deceptive actions. Those arguments, however, are inconsistent with the low threshold required to plead this element of a UDTPA claim—namely, allegations that "that the act of deception

proximately resulted in *some adverse impact* or actual injury to the plaintiffs." *Walker v. Sloan*, 137 N.C. App. 387, 399 (2000) (emphasis added).

*First*, D&B argues that the Carroll Companies' allegations that they "invested substantial time and money" into attempting to remedy the harm from D&B's actions—not just in bringing this lawsuit, but also in their pre-suit efforts to address and attempt to stop D&B's actions—are insufficient to establish the "injury" element because they are "another measure of reputational damages." D&B's Br. 45. D&B does not cite any case law, however, for the proposition that these are only "reputational damages." Even more tellingly, D&B does not explain why, even if these are arguably "reputational damages," they would not be potentially recoverable under the Sixth Claim for Relief; after all, the first aspect of D&B's unfair and deceptive scheme to leverage business for itself is to publish false or misleading credit reports that can "make or break" small businesses (such that those businesses are then pressured to spend "substantial time and money" to remedy the harm). *Accord* JA145 ("A poor Failure Score could make it difficult for your business to access capital or result in less generous loan terms. You could also potentially miss out on lucrative contracts due to concerns about your business's ability to fulfill its financial obligations.").

*Second*, D&B unsuccessfully attempts to elide the fact that the North Carolina Court of Appeals explicitly recognized "disruption of . . . business" and legal fees

expended to remedy the effect of deceptive communications as cognizable injuries in *Pinehurst, Inc. v. O'Leary Brothers Realty*, 79 N.C. App. 51 (1986). D&B seeks to distinguish the holding in *Pinehurst* by arguing that the time and expense incurred by the plaintiff in that case "resulted from legal claims and complaints asserted against the plaintiff." D&B's Br. 36. Tellingly, D&B does not explain why that is the only situation in which business disruption resulting from deceptive communications would qualify as an "injury" for purposes of a UDTPA claim, and no such distinction can be found in the text of the decision itself.

In *Pinehurst*, the plaintiff's business disruption injuries flowed from its efforts to remedy the effect of defendants' dissemination of a letter that the court found to be "unfair, deceptive, and maliciously published" even though it contained "no false statements" (and therefore was not defamatory). 79 N.C. App. at 56. In fact, the court in *Pinehurst* confirmed that "[p]roof of actual deception is not necessary; it is enough that the statements had the capacity to deceive." *Id*. at 59. This further undermines D&B's implication that the damages it characterizes as "reputational" can only be recovered on a claim premised on defamation.

D&B also questions the Carroll Companies' reliance on both *Pinehurst* and *Talbert v. Mauney*, 80 N.C. App. 477 (1986), on the grounds that the portions quoted by the Carroll Companies come from discussions of UDTPA elements other than "injury." D&B's Br. 36-37. But D&B cannot dispute that both decisions recognized

injuries like the ones asserted by the Carroll Companies—the effects of "disruption of their business" in *Pinehurst* (79 N.C. App. at 64) and "wrongful and intentional harm to [plaintiffs'] credit rating and business prospects" in *Talbert* (80 N.C. App. at 481)—as sufficient to support a UDTPA claim.

*Third*, in arguing that "nominal damages" are insufficient to support a UDTPA claim, D&B again ignores that *Pinehurst* held just the opposite. D&B confoundingly claims that the award of $1 in nominal damages in *Pinehurst* is insignificant because the court in *Pinehurst* found that "defendants' wrongful conduct caused a disruption of [plaintiffs'] business, loss of administrative time, and injury to their business reputation." D&B's Br. 39 (quoting *Pinehurst*, 79 N.C. App. at 64). But these, of course, are the same injuries the Carroll Companies allege in *this* case—and more importantly, the same injuries that the court in *Pinehurst* found resulted in only *nominal* damages. That is why the district court in *this* case recognized *Pinehurst* as holding that nominal damages are sufficient to sustain a UDTPA claim. JA342.

D&B's attempt to distinguish the award of nominal damages on a UDTPA claim in *Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co., Ltd*, No. 1:12-CV-1146, 2020 WL 1150214 (M.D.N.C. Mar. 10, 2020), is similarly flawed. D&B assigns great significance to the fact that the court in *Hongda* awarded monetary damages on *other* claims, but that does not change the fact that the district court

awarded nominal damages on a UDTPA claim against one defendant, rather than finding that the claim simply failed. In other words, if D&B was right that nominal damages cannot support a UDTPA claim, there would have been no judgment for nominal damages on the claim at all. Instead, as illustrated by *Pinehurst* and *Hongda*, D&B's argument is simply wrong, and this Court should hold that the allegations of the Proposed Amended Complaint were sufficient for the Carroll Companies' Sixth Claim for Relief to survive the pleadings stage.

## CONCLUSION

The district court's order denying Plaintiffs' motion to alter or amend the judgment to allow leave to file an amended complaint should be reversed. In the alternative, the district court's order granting Defendants' motion to dismiss with prejudice should be reversed.

Respectfully submitted this 7th day of August, 2024.

> BROOKS, PIERCE, MCLENDON,
> HUMPHREY & LEONARD, L.L.P.
>
> By: /s/ Eric M. David
> Eric M. David
> N.C. State Bar No. 38118
> edavid@brookspierce.com
> Andrew L. Rodenbough
> N.C. State Bar No. 46364
> arodenbough@brookspierce.com
> Pearson G. Cost
> N.C. State Bar No. 60828
> pcost@brookspierce.com
> Post Office Box 1800
> Raleigh, North Carolina 27602
> Telephone: 919-839-0300
> *Attorneys for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [X] this brief contains 5,922 words.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt. Times New Roman.

   Dated: August 7, 2024                    /s/ Eric M. David
                                            *Attorney for Plaintiffs-Appellants*